**STATE of Tennessee, Appellee,**

v.

**Timothy McMULLIN,
Defendant/Appellant.**

Court of Criminal Appeals of Tennessee, at Nashville.

Nov. 29, 1990.

James Daniel Freemon, Lawrenceburg, David L. Raybin, Nashville, for defendant/appellant.

Charles W. Burson, Atty. Gen., Don Schwendimann, Asst. Dist. Atty. Gen., and Linda Ann Hammond, Asst. Atty. Gen., for appellee.

OPINION

WILLIAM S. RUSSELL, Special Judge.

Timothy McMullin appeals as of right from his conviction for murder in the first degree and resultant sentence of life imprisonment.

The dispositive question is the validity of the plaint of the appellant that he was denied due process of law,[1] a proper jury trial[2] and the effective assistance of counsel[3] because the trial court conducted the trial for extensive periods of time during the evening hours. For the reasons hereinafter detailed, we find this issue in favor of the appellant and reverse his conviction and remand the case to the trial court for a new trial.

1. Fourteenth Amendment, U.S. Constitution; Art. 1, Sec. 8, Tennessee Constitution.

2. Sixth Amendment, U.S. Constitution; Art. 1, Sec. 9, Tennessee Constitution.

3. Sixth Amendment, U.S. Constitution; Art. 1, Sec. 9, Tennessee Constitution.

We dealt with this same issue in the case of *Hembree v. State*, 546 S.W.2d 235 (Tenn. Crim.App.1976), and said:

"The Sixth Amendment guarantees to a criminal defendant the right to effective assistance of counsel at every step in the proceedings * * * the last hour of the trial is an essential portion thereof. We hold that the court erred in not adjourning at midnight when counsel stated they could no longer be effective and that they were not thinking clearly. We are also mindful of the fatigue of the jurors. We think that absent unusual and compelling circumstances the jury should not be permitted to hear evidence until 1:00 a.m. No reasonable cause was given for proceeding until this hour and a defendant being tried for murder is not only entitled to reasonably alert counsel, but to witnesses who are reasonably alert and that the jury should likewise be clear-headed and not unduly fatigued. We think that the Fourteenth Amendment of the United States Constitution and Article 1, Section 8, of the Tennessee Constitution grants appellants these rights. This is not to say that night sessions *per se* are improper under unusual circumstances; however, we do hold that a night session should be terminated at a more reasonable hour, absent consent of the parties and all members of the jury."

This is a clear statement of the law on this subject, and we subscribe to its validity. All who have as counsel participated, or presently participate, in the trial of serious criminal cases before a jury, can attest to the physical and mental strain that goes with the task. In addition to the hours spent while court is in session, absolutely essential out of court work must be done in preparation for and in reaction to what goes on during the trial. The task is particularly trying when, as is true in the case at bar, the defendant is represented by one attorney.

Jurors must also have the out of court time for sufficient rest and relaxation to be alert, comfortable and unhurried in the course of their deliberative function. In the case at bar we had a sequestered jury, composed of twelve women. They could easily have felt rushed and coerced by the proceedings as they unfolded in this case. When the timetable followed, as hereinafter set out, is analyzed and consideration given to the delays inherent in transporting a sequestered jury, in attending to their personal needs, and getting them settled into their place of lodging for the night, it is obvious that the jury had less than normal rest time.

Nowhere is there shown a compelling reason for following the schedule that the court chose to follow in this case. Defense counsel's motions to recess at normal hours were overruled. At no time was the permission of the jurors to work abnormally long obtained. The jury complained on the first evening that the jury was cold, and complained that it was too hot the second night.

■ The trial record reflects that the case commenced at 9 a.m. on the first day of trial and did not adjourn that day until 11:45 p.m., a period of 14 hours and 45 minutes. The second day of trial commenced at 9:20 a.m. and the jury verdict received and the jury discharged at 11:50 p.m., a total of 14 hours and 30 minutes on the second day. Of the 38 hours and 50 minutes that elapsed between the commencement and the end of the trial, court was in session all except 9 hours and 35 minutes.

At about 10:30 p.m. of the first day of trial, the following occurred:

"The Court: All right, General, do you have any other witnesses that you can call?

General Schwendimann: Not a brief one, Your Honor. I've got—I mean, we can go all night if you want to, but I don't have any brief ones.

The Court: Now is the jury—you look pretty alert, are any of you getting weary?

Juror: We're cold.

The Court: You're cold? Well, can we get some heat?

The Clerk: It'll be a job getting any.

The Court: Well, if you have somebody, go ahead.

Mr. Freemon: Well, Your Honor, I would ask if we could recess. It's 10:30 and we've got to start tomorrow again at 9:00. It's—

The Court: Well, I'm going to ask the General to go ahead if he has somebody available.

General Schwendimann: Call Jerry Tenry.

The Court: What's the problem with the heat, Mr. Holt?

The Clerk: They've got the boiler room locked up and I don't have a key.

The Sheriff: Your Honor, there's a piece broke on the boiler itself, too, is the reason there's not any heat.

\*   \*   \*   \*   \*   \*

The Court: We are going ahead with this witness.

Mr. Freemon: Could I ask for a few minutes recess, Your Honor?

The Court: No, sir. We're going ahead with this witness at this time."

The witness, Jerry Tenry, was allowed to testify. At 11:45 p.m. the court was adjourned.

All of the proof in the case was ended at about 6 p.m. on the second day. The transcript reflects the following:

"The Court: All right. Do you have any further rebuttal?

General Schwendimann: No, Your Honor.

The Court: Do you have any further evidence?

Mr. Freemon: No, sir.

The Court: All right, let's talk about our plans. I have drafted the charge and I need to go over it with you all.

Mr. Freemon: Your Honor, I would ask the Court respectfully that it's now ten minutes after 6:00, we worked yesterday from 9:00 o'clock to 12:30 a.m. this morning. I got about four hours sleep last night, and I'm very fatigued. And I would ask the Court to recess for the evening and allow us to take up closing arguments in the morning.

The Court: No, I won't do that. You are the one that asked for this sequestered jury, so it's not right to keep these people here.

Mr. Freemon: Well, Your Honor—

The Court: Mr. Freeman, we're going forward with the case.

Mr. Freemon: All right, let me state for the record that I am—

The Court: Go ahead.

Mr. Freemon: —mentally fatigued and I do not feel that I have adequately—well, I haven't prepared my closing remarks and I feel that my degree of mental fatigue will be prejudicial to my client's case. And it's obvious to me, I think, that this case cannot go to the jury before 7:30 or 8:00, so I don't know what Your Honor's hurry is. Is there somewhere you've got to be tomorrow?

The Court: Sir, I'm not to be interrogated. You go ahead and make your comment.

\*   \*   \*   \*   \*   \*

The Court: I'm ready to go forward.

Mr. Freemon:—You're probably a better man than I am, but I have to tell you that the attorney that I am, you know, I need eight hours, I just don't function well unless I have a regular routine.

The Court: I find that you are functioning well, so there's no problem.

Mr. Freemon: Well, I'm telling you that I'm not because I know my limitations.

The Court: We will go forward.

\*   \*   \*   \*   \*   \*

Mr. Freemon: Could we step out in the hall and discuss this, Your Honor? Does the fact that you're leaving on vacation tomorrow have anything to do with it?"

Court was then recessed for dinner. The jury commenced deliberations at 9:28 p.m. Within a few minutes the jury sent word through the court officer that they wanted the heat cut off. This message was sent:

"The Court: Tell them that they complained about the cold last night so that the janitor has set it up now and we can't turn it back."

The jury reported that it had reached a verdict at 11:38 p.m. The court was adjourned at 11:50 p.m.

When this question of late hours was raised in the motion for a new trial, the court responded with this statement:

"The Court: Well, I deny the motion for a new trial. And since Mr. Raybin had candidly stated that the primary ground is the fact that I kept court at a late hour, I'll just address that issue.

"When I assumed the bench a little over seven years ago, one thing that I determined was that I would try to treat lawyers as I would have liked to have been treated as a lawyer. And the main thing that I thought was important was being able to have all the *opportunity to express my theory about a case and to have* full opportunity to tell the judge, but even more important, probably, to tell the jury, everything I wanted to tell them. So that was my resolution, and here on my last day in office, I can say that I have kept that resolution. I've never hurried any lawyer. I have never come up with this refrain that you hear judges sometimes say, 'Let's move it, let's move it, let's move it.' I've never done that. I've let the lawyer get up and talk as long as he wants to, and if he wants to repeat himself three times, I've let him do that. I've never limited any lawyer. And I thought that was the best contribution that I could make in the trial court, because I always felt like it was *the most serious problem that the judges* encouraged when they didn't take enough time to let the jury understand the case, and for the judge, himself, to understand the case. So that's been my resolution, and as I say, I've kept it, and nobody can ever say that I hurried any lawyer in court, or ever limited him. If he wants to argue for two hours, three hours, that was his risk, but I never limited.

"Now, in return for that, I felt like that I wasn't going to move as fast as other courts did since I was going to let the lawyers take all the time they wanted, so I determined to hold court at night, and this is what I did. I held court on two occasions until 5:00 o'clock in the morning, and then someone called my attention to this *Hembree* case that you've cited, and when that happened, I stopped, and I at least always tried to stop by midnight.

"But as I understand that case and other cases, that that's not laying down any absolute rule, but that special circumstances can cause you to hold court later. One special circumstance that I have always recognized is that when you have a sequestered jury you've got a problem. You're taking citizens out of their homes and I think that the Court owes them the obligation to try to get them back into their homes as soon as possible.

"So that is one consistent approach I take, and whenever we had a locked up jury we always had court at night. In one particular case where we had a locked up jury that we went on until midnight, I sensed that the jury began to look weary, so the next day I asked them if they would retire and discuss the matter and tell me what they thought about the court hours. And they did that and they reported back that they wanted to have court at night, that they felt like it was the Court's duty to come at night and not just leave them sitting around watching t.v. in the motel room. But at the same time, they said that they didn't think that staying up to midnight was good either, and they specifically came up with the thought that they felt like it would be good to adjourn at 9:00 o'clock. And after that I did attempt to call a halt to proceedings around 9:00 o'clock.

"I have had this same issue raised, it might not be a surprise to you, and the appellate courts have not reversed any of the cases that I decided where the late hours were involved.

"In this particular case, we had not only a sequestered jury, but we had another unusual factor, as far as I was concerned, in that we had twelve women on the jury. And taking twelve women from their homes on December 20th is certainly an unusual circumstance, and I felt like it was important to move the

case along to give them the opportunity to hear the case, to decide it and get back to their homes.

"Now, it is true that I had a plane reservation for a trip that I had made months before, and I was obviously anxious to be able to go, but I had already determined that if the jury didn't reach a verdict on that second night that I was going to call them back for further deliberations the next day. So that was not the basis for my keeping the jury."

The trial judge went on to say that he did not believe that defense counsel was exhausted, as the defense lawyer claimed; and recounted that Mr. Freemon had driven to his home county and back during the dinner recess the second day.

We respect the trial judge, and do not question his good faith. We disagree with his stated policy of allowing counsel unbridled verbosity and/or redundancy, with the trade-off being late hours. Counsel should be controlled if wasting time; and unusually long hours can constitute constitutional rights deprivations to a defendant.

The unusual circumstances referred to in *Hembree* as justifying the use of night court sessions do not include the mere facts that the jury is being sequestered, and that women are on the jury, as the trial judge held. Both of those circumstances are normal in the context of trying a serious criminal case before a jury.

There is the further consideration of the witnesses, court officers and other officials. Court reporters have a particularly trying job, and absent unusual circumstances should not be subjected to more than an eight hour work day.

Courts exist for the people, and not people for the courts. Parties, witnesses, jurors, attorneys, court officers, courthouse custodians, officials and the general public are entitled to have the courts operate at reasonable hours. A witness subpoenaed to testify should not normally be expected to wait until bedtime to testify. We cannot conceive of an all-night trial, until 5 a.m., as described by this trial judge, being fair, reasonable or necessary.

The case *sub judice* is a first degree murder prosecution. The appellant shot his brother-in-law through the head at close range with a deer rifle. He claims that he did so in defense of his sister (the wife of the victim), and she corroborates him to a degree. A prosecution witness disputes any necessity for the killing, and testified that the appellant shot the victim dead without a word. Under the State's factual thesis a close question of fact exists as between first and second degree murder, premeditation and deliberation being at issue. In summary, it is a very serious case calling for deliberate judgment.

We find that the stressful hours involved in the trial of this case, over the protest of the defendant's counsel, without the express agreement of the jurors, and without unusual and compelling circumstances, violates the rule laid down in *Hembree v. State, supra,* and constituted constitutional rights deprivations of the right to counsel and the right to due process of law requiring a reversal and a remand for a new trial.

The State argues that the *Hembree* rule is that night sessions are not *per se* improper and argues that the case merely suggests that night sessions be terminated at a more reasonable hour than 1:00 o'clock a.m. absent the consent of the parties and all members of the jury. This is a misinterpretation of *Hembree.* What it holds is that late night sessions are proper only under *unusual* circumstances; and then only with the consent of the parties and all members of the jury.

The nature of the session being held is of considerable importance in judging whether the ability of counsel is affected adversely. Certainly, once a case has been submitted to the jury the function of the attorneys is much less demanding, and the right to the assistance of counsel would hardly be denied if a jury is allowed to deliberate into the evening hours. The key due process question in that instance is whether or not all of the jurors are both alert and desirous of continuing deliberations, assuming in the first instance that there is a good reason not to recess court at the end of a normal work day.

Common experience teaches us that some of our citizens, particularly those with a rural orientation, regularly retire early. Judges must also bear in mind that many jurors hesitate to complain to the court, and are greatly influenced by what the will of the judge is perceived to be. Judges, in deciding the competency of jurors to continue working, should rely upon more than just their expressed agreement to continue. A careful objective judgment should be made.

Several reported cases have dealt with the issue under discussion since *Hembree.* We do not find that the holding has been reversed or even consciously eroded. If further clarification is needed, the instant opinion is meant to serve that purpose.

In *Seelbach v. State,* 572 S.W.2d 267 (Tenn.Crim.App.1978), the trial began on Wednesday, and it was generally understood that it needed to be completed that week as the trial judge had court elsewhere on Monday. Presumably, regular adjournment hours were observed on Wednesday and Thursday. On Friday the judge announced at 6:25 p.m. that he intended to continue in session until the defendants rested or until a reasonable hour, whichever came first. At 9:13 p.m. counsel for one of the defendants pointed out the lateness of the hour and the judge immediately adjourned court and reconvened Saturday morning. This court held that this one night session to 9:13 p.m. was reasonable under the circumstances. Implicit in that case is that no objection was made until 9:13 p.m.; and there also was a valid reason to extend the court day on Friday, so as to be able to finish the case on Saturday and free the judge to hold court elsewhere on Monday.

This issue arose in *Holt v. State,* 591 S.W.2d 785 (Tenn.Crim.App.1979), wherein the trial judge held court until 10:05 p.m. on the second day of the trial. At 6:45 p.m. defense counsel informed the court that they were fatigued and requested an adjournment. The trial judge immediately recessed until 8:00 o'clock p.m. and then resumed hearing evidence until 10:05 o'clock p.m. This occurred on Friday and

the trial judge was anxious to complete the case before Sunday, since the jury was sequestered. This court held that this was not oppressive or unreasonable. The unusual circumstance was the need to avoid locking up the jury on Sunday. When defense counsel complained of fatigue, the judge recessed for an hour and a quarter; and then worked only two hours and five minutes after the recess. We assume that after the recess nobody objected to proceeding.

The state relies upon this court's opinion in the case of *State v. Craig,* 655 S.W.2d 186 (Tenn.Crim.App.1983). This was a two day trial. Defense counsel made a motion for adjournment, presumably at or near the regular hour for adjournment; but the trial judge declined to adjourn and held court until 11:40 p.m. The jury charge delivery was completed at 11:20 p.m., and the judge told the jury that they could deliberate then, or wait until the next morning. After twenty minutes the jury announced that they wished to deliberate the next day. They started the next day at 8:30 a.m. and returned a verdict at 2:45 p.m.

The defendant conceded in his brief that his plaint about the late hour was not reversible error. This court noted that short recesses were taken during the trial, as well as lunch and dinner breaks. No member of the jury requested an adjournment, and nothing in the record indicated juror fatigue. The complaint in this court was jury fatigue, and not counsel fatigue. The long period of deliberation indicated to this court that the jury "was obviously fully capable of considering the evidence." The court said, "We find nothing in the record to indicate the jury's verdict was in any way affected or influenced by the night session of which complaint is made."

The State reads the *Craig* case as holding that unless it can be shown that the jury's guilty verdict was in some way affected or influenced by the night session that any error would not be reversible. We believe this to be too narrow a view of the holding. *Craig* dealt with the issue of alleged jury fatigue, and his attorney conceded that the error was not reversible.

This court found numerous recesses, no juror complaint or other evidence of fatigue, adjournment at a time of the jury's choosing, and full deliberation the following day. The opinion does not mention the *Hembree* rule, and certainly does not overrule it.

In a post-conviction relief case, *Hindman v. State*, 672 S.W.2d 223 (Tenn.Crim. App.1984), the petitioner claimed that he did not get a fair trial because the convicting jury deliberated until after midnight. The trial judge found no prejudice from the late deliberation, and this court agreed. The opinion does not contain sufficient facts to be analyzed in the light of the *Hembree* rule.

In summary, both the federal and state constitutions bridle the power of a trial judge in the exercise of his or her discretion in setting after-hours court sessions in criminal cases tried before a jury. The protection of the right of the defendant to the assistance of competent counsel requires that the court schedule not be such that counsel competency is eroded by unusually long in-court hours. The defendant's right to due process of law requires that the jury deciding guilt or innocence be shielded from fatigue that affects their mental and physical ability to function at normal levels. Late night court in criminal jury cases should be scheduled only when unusual circumstances require it, and not then if either defense counsel or any juror objects upon reasonably based grounds having to do with the lateness of the hour. Where late sessions are scheduled under the requisite unusual circumstances, good practice would be to let the record reflect the agreement of defense counsel and all jurors.

The other issues raised by the appellant, i.e., the legal sufficiency of the evidence of murder, the alleged ineffectiveness of defense counsel because of fatigue, a comment by a prosecution witness that the accused failed to make a statement after being given his Miranda rights, and an alleged comment by the trial judge in the presence of the jury upon the evidence and upon the integrity of defense counsel, are rendered moot by the granting of a new trial.

Reversed and remanded for a new trial.

WADE, Panel P.J., and REID, J., concur.