STATE of Tennessee, Appellee,

v.

**Ralph E. PARTON, Appellant.**

Court of Criminal Appeals of Tennessee, at Knoxville.

May 31, 1991.

---

Dwight E. Stokes, Galyon & Stokes, Sevierville, for appellant.

Charles W. Burson, Atty. Gen. & Reporter, John B. Nisbet, III, Asst. Atty. Gen., Nashville, and Al C. Schmutzer, Jr., Dist. Atty. Gen., Sevierville, for appellee.

OPINION

SUMMERS, Judge.

OPINION

This case presents an appeal as of right by the appellant, Ralph E. Parton, from his

convictions in the Circuit Court for Sevier County, Tennessee. The case was tried on April 5–6, 1990; and sentencing was conducted immediately thereafter.

In this serious matter, appellant was convicted of escaping from the custody of a Sevier County Sheriff's officer. He was also convicted of armed robbery wherein the officer was the victim. Two co-defendants were tried with this appellant on related charges. Co-defendant Brenda Green was acquitted. Co-defendant Larry B. Parton, appellant's brother, was found guilty of felonious rescue and aggravated assault. The prosecution and the defense were well prepared and tried this lawsuit vigorously and professionally.

THE ISSUES FOR REVIEW

The issues to be decided by this Court are:

A. Whether the trial judge erred in failing to recuse himself.

B. Whether the evidence was legally sufficient to support the verdict of the jury as to crime of armed robbery.

C. Whether the trial court erred and abused its discretion in allowing the trial to proceed into the early morning hours of April 6, 1990, thus depriving the appellant of a fair trial.

D. Whether the trial court committed reversible error in failing to sustain the appellant's objection to the state's closing argument and/or in failing to grant the appellant's motion for a mistrial due to the state's closing argument.

E. Whether the trial court erred in failing to sustain the objections of the appellant to the prosecutorial misconduct of the district attorney general.

F. Whether the cumulative effect of all of the errors involved deprived the appellant of a fair trial.

A. THE TRIAL JUDGE'S RECUSAL

■ Prior to trial, appellant moved for the trial judge's recusal based upon the

fact that appellant had filed a grievance against the trial judge with the Court of the Judiciary and the Tennessee Supreme Court. The appellant attached as an exhibit to the recusal hearing a letter that he had written to the Court of the Judiciary. As alleged in his letter, the appellant believed that the judge could not be impartial because the judge had sat on prior trials and hearings involving the appellant. Appellant complained of the judge's bad attitude against him in prior hearings. Appellant also had a pending post-conviction relief petition. He was particularly disturbed that each time the trial court had sentenced the appellant in previous cases, the court had imposed the maximum sentence on the appellant.

Responding to the appellant's motion to recuse, the trial judge refused to step aside. The court admitted that he had seen the appellant before, and he assumed that the appellant was truthful when he stated that he had received the maximum sentence every time. The trial judge said that he took no offense to appellant's having filed a complaint, because he was aware that a trial judge is "a solid target." The judge stated that he had no problems with giving the appellant a fair trial.

Rule 10 of the Tennessee Supreme Court Rules contains the Code of Judicial Conduct. Canon 3(C) states in part:

C. Disqualification.

(1) A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including but not limited to instances where:

(a) he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding.

The determination by a trial judge of whether he should disqualify himself from sitting in a case is a matter of sound discretion with the court. *Wiseman v. Spaulding,* 573 S.W.2d 490 (Tenn.App.1978).

We have scrutinized this record thoroughly. There is no evidence that the trial judge had any personal bias or prejudice against this appellant. No evidence exists that the court violated any provisions of Canon 3. The trial judge was well within his discretion to refuse to recuse himself. This issue is overruled.

## B. LEGAL SUFFICIENCY OF THE EVIDENCE

■ The appellant does not contest the legal sufficiency of the evidence as to his conviction of felonious escape. He addresses his issue to the sufficiency of the evidence as to armed robbery. We will give a brief synopsis of the facts gleaned from this record to address this question.

On August 18, 1989, the appellant, a prisoner, was taken by Officer Timothy Scott Hurst of the Sevier County Sheriff's Department to a dentist's office for an appointment. Officer Hurst was an eight-year veteran of the Sheriff's department. Appellant was shackled in leg irons. Officer Hurst escorted the appellant into the office and was present while the dentist worked on the appellant. Appellant's brother, Larry Parton, came to the dentist's office while the appellant and Officer Hurst were present.

After the dentist finished his treatment of the appellant, appellant and Officer Hurst walked out the door of the office and entered a foyer outside the dentist's office. Larry Parton was waiting for the officer and his brother, the appellant. Larry Parton pointed a handgun at Officer Hurst's chest and told Hurst to back into the foyer. Appellant's brother lowered the gun to his side and Officer Hurst "went after the gun." After a struggle, Officer Hurst was pushed to the floor. Appellant's brother pointed a gun at Officer Hurst's head while appellant took the officer's gun and portable radio. The appellant then ran down a ramp out of the door leaving the appellant's brother standing over the officer. While the brother held a gun to his head, Officer Hurst literally begged for his life. The law enforcement officer was justifiably terrified.

After the assault and struggle with Officer Hurst, the brothers made efforts to take the radio out of the officer's cruiser. The appellant and his brother then escaped in another vehicle. They were later captured.

The appellant's version of the facts was much different. He said that while Officer Hurst was driving him to the dentist's office, he told Hurst that he would give him $2,000.00 if the officer would let him escape. He maintained that while at the dentist's office, he gave the officer the money. He denied that his brother ever had a gun or that Officer Hurst actually struggled with either the appellant or his brother. His basic defense was that the officer was a willing participant in the escape.

The jury chose not to believe appellant; and, rather, it believed the evidence produced by Officer Hurst and the other state's witnesses.

A jury verdict approved by the trial judge accredits the testimony of the state's witnesses and resolves all conflicts in favor of the state's theory. *State v. Hatchett,* 560 S.W.2d 627 (Tenn.1978). On appeal, the state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. *State v. Cabbage,* 571 S.W.2d 832 (Tenn.1978). A verdict against the defendant removes the presumption of innocence and raises a presumption of guilt which the appellant must overcome. *State v. Grace,* 493 S.W.2d 474 (Tenn.1973). Where the sufficiency of the evidence is challenged by the appellant, the question for this Court to determine is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Rule 13(e), T.R.A.P.

We have thoroughly reviewed this entire record. We find that the evidence is legally sufficient to support the convictions of both armed robbery and felonious escape. We respectfully overrule this issue.

C. WHETHER THE TRIAL COURT ERRED IN ALLOWING THE TRIAL TO PROCEED INTO THE EARLY MORNING HOURS OF APRIL 6, 1990

■ The trial began at an hour uncertain on Thursday, April 5, 1990. The record indicates that jury selection took two to three hours. The hearing of proof apparently began on the afternoon of the same day. Each of the three defendants was represented by individual counsel. The state called eight witnesses in its case in chief, and the three defendants called a total of five witnesses. The appellant testified on his own behalf. After closing arguments and jury instructions, the jury received the case at approximately 11:45 p.m. on April 5th. Deliberations ensued, and a verdict was reported at 2:15 a.m. on April 6th. The trial judge then conducted appellant's sentencing hearing after the jury report.

Several motions were heard by the court after jury selection and throughout the trial. These motions were of a substantive nature, and they were made on behalf of both the defense and the prosecution. They included issues of venue, discovery, election of charges, dismissal of charges, recusal of the trial judge, and other grave matters. The record indicates the court tried the case continuously from jury selection through sentencing. The court apparently had two short recesses and one break for supper.

When the trial began, the judge announced that he had some administrative and logistical problems. He desired to have the case tried that day without reconvening on Friday, April 6th. There were two courtrooms in the courthouse which the trial judge considered usable, one of which was the courtroom for this trial. He announced that another circuit judge and a chancellor were to use those two courtrooms the next day. Part of his comments are as follows:

> Hallelujah, we've got a jury. We've got a jury. Outstanding. Now, I tell you what we've got. We've got problems. We've had problems all day long. We've got more problems. Judge Holt's got Court scheduled here tomorrow. I reckon the courtroom across the hall is taken up, too. There's no courtroom available. We've got this lawsuit to try. I've been

promising myself for ten years I was going to quit at 5:00 and I just rarely tell the truth about that. If we can try this lawsuit today, we ought to try it. Can you all stand it? How are you all feeling? The lawsuit needs to be tried and we've worked, what, a couple or three hours to pick this jury. Too long. Two hours and a half. Interrupted for another little while. It's taken us two hours to pick this jury. We need to try this lawsuit.... Ready to try this lawsuit. Ten minute recess. Going to try this lawsuit. The rest of you can stay or go. Come back at 9:00 Monday. Call in first.

Each witness was subject to direct-examination, cross-examination by three attorneys, redirect, and then sometimes recross. After the second witness, the court informed the jury:

Ladies and gentlemen, the officer got the phone numbers from you and is making some phone calls. I hate to impose on you, but we need to try this lawsuit. Is everybody in good shape? Good order, ready to go. Hear this proof; try this lawsuit. Call your next witness.

In fairness to the trial court, he asked the attorneys and the jury whether they had any objection to his conducting the trial late into the night. There was no formal objection by lawyer or juror. Defense counsel did obliquely refer to the fact that the trial had been going on for a considerable amount of time. Defense counsel inquired after the state had rested:

The other thing I wanted to do is get a little direction on what the Court wanted to do. I just wanted to mention that the jury's been working a long time. I didn't know what the Court wanted to do.

Defense counsel told the court that the judge might consider inquiring about the jury's continuing with the lawsuit, whereupon the judge said:

You don't think I ought to sweat them out then. Put out the food, fire and water.

\* \* \* \* \* \*

Well, see this thing could shut down very rapidly depending. It's going to shut down rapidly anyway no matter what you do. The more serious question is what are we going to do about the people in this jury and they are obviously restless.

After the case was presented by both sides and the judge had charged the jury, the judge addressed the jury as follows:

Ladies and gentlemen, you've been patient and you've worked hard, and the night moves on. It's now fifteen 'til 12:00 [midnight]. You've got the proof; you've got the charge. You've heard the argument. You are ready to retire. We only have two courtrooms in this courthouse. We're going to have two judges here tomorrow and that's the reason for the jam up. Judge Holt's having court here tomorrow. Chester Rainwater, Chancellor Rainwater is having court tomorrow, and here we are at this point in this trial.

Formal objection to the time frame was made after appellant was convicted when counsel filed a motion for judgment of acquittal or in the alternative a motion for new trial.

Several reported cases exist where an objection was interposed in a marathon trial. The issue is different in the present case because no express objection was made by counsel or by a juror. Nonetheless, the case of *State v. McMullin*, 801 S.W.2d 826 (Tenn.Crim.App.1990) controls. *McMullin* relies on *Hembree v. State*, 546 S.W.2d 235 (Tenn.Crim.App.1976) for much of its reasoning. In *Hembree* at pages 242–243, this Court reasoned:

The Sixth Amendment guarantees to a criminal defendant the right to effective assistance of counsel at every step in the proceedings. *Powell v. Alabama*, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932); *McKeldin v. State*, 516 S.W.2d 82 (Tenn. 1974). The last hour of a trial is an essential portion thereof. We hold that the Court erred in not adjourning at midnight when counsel stated that they could no longer be effective and that they were no longer thinking clearly.

We are also mindful of the fatigue of the jurors. We think that absent unusual and compelling circumstances, the jury

should not be permitted to listen to evidence until 1:00 a.m. No reasonable cause was given for proceeding until this hour and a defendant ... is not only entitled to reasonably alert counsel, but to witnesses who are reasonably alert and that the jury should likewise be clear-headed and not unduly fatigued. We think that the 14th Amendment of the United States Constitution and Art. 1, § 8 of the Tennessee Constitution grants appellants these rights.

\*     \*     \*     \*     \*     \*

Before we can hold a Federal constitutional error to be harmless, we must be able to declare a belief that it was harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *McKeldin v. State*, supra. We cannot declare a belief that the error is harmless beyond a reasonable doubt....

In *McMullin* the trial commenced at 9:00 a.m. on the first day of trial and did not adjourn that night until 11:45 p.m. The second day of trial commenced at 9:20 a.m., and the jury verdict was received and the jury discharged at 11:50 p.m. Of the 38 hours and 50 minutes that elapsed between the commencement and the end of the trial, the court was in session in all but about 9½ hours. We are mindful that these facts are different from the facts at bar, but the reasoning remains the same.

This Court in *McMullin* at pages 830–832 of 801 S.W.2d stated as follows:

The unusual circumstances referred to in *Hembree* as justifying the use of night court sessions do not include the mere facts that the jury is being sequestered....

There is the further consideration of the witnesses, court officers and other officials. Court reporters have a particularly trying job, and absent unusual circumstances should not be subjected to more than an eight-hour work day.

Courts exist for the people, and not people for the courts. Parties, witnesses, jurors, attorneys, court officers, courthouse custodians, officials and the general public are entitled to have the courts operate at reasonable hours. A witness subpoenaed to testify should not normally be expected to wait until bedtime to testify.

\*     \*     \*     \*     \*     \*

In summary, both the federal and state constitutions bridle the power of a trial judge in the exercise of his or her discretion in setting after-hours court sessions in criminal cases tried before a jury. The protection of the right of the defendant to the assistance of competent counsel requires that the court schedule not be such that counsel competency is eroded by unusually long in-court hours. The defendant's right to due process of law requires that the jury deciding guilt or innocence be shielded from fatigue that affects their mental and physical ability to function at normal levels.

We do not question the good intentions of the trial judge in wanting to dispose of this case and move forward with his docket. This panel of the Court knows individually and collectively from our own experiences in the courtroom that cases need to be tried and disposed of judiciously, ethically, and as expeditiously as possible. At the same time, expedition cannot substitute for due process. If so, the integrity of the judicial system is undermined.

The trial court stated that there were conflicts in the use of the courtroom, and that was the primary reason that the trial needed to go forward. When there is a conflict in the use of a courtroom, statutory law and comity dictate that an ongoing criminal trial takes priority. Generally, circuit court takes priority over chancery court. Criminal trials take priority over civil trials. See T.C.A. § 16–1–104 and Rule 50, Tenn.R.Crim.P. If the trial judge for some reason feels that it is impractical to hold his session at the courthouse, he or she can move the case to another location with equal decorum pursuant to T.C.A. § 16–1–105 (Supp.1989).

█ It is clear in this state that late night court sessions should be scheduled "only when unusual circumstances require it...." *McMullin*, 801 S.W.2d at 832. Re-

**34**

gardless of whether counsel or any juror objects, the late night sessions should be avoided; and they must be justified because of unusual circumstances. If the requisite unusual circumstances do exist and late night sessions are scheduled because of necessity, good practice would be to also let the record affirmatively reflect that all counsel and all jurors expressly agree. But the threshold question which must always be determined by the court is whether the circumstances justify the unusual session. The facts of this case do not provide such justification.

Trying a serious criminal case before a jury is one of life's most stressful activities. It is a tough task. There must be adequate time for the essential out-of-court work which needs to be accomplished in preparation for and in reaction to the events which occur during a trial. This is particularly true when the accused, such as appellant herein, is represented by one lawyer. The same is true where a single prosecutor represents the state.

Jurors must be alert, unhurried and comfortable in order to properly deliberate and make the important decisions with which they are confronted. Thus, sufficient out-of-court time is necessary for their rest and relaxation. By and large, jurors are unfamiliar with the mysteries and mystique of a judge, a courtroom, litigants, lawyers, and criminal law. They are hesitant to express themselves, and they may give tacit approval to an issue when actually they would like to object. Jurors can easily be coerced by the proceedings and by the trial judge. They sometimes may feel that they must rush to judgment and hurry to dispose of a case. Lawyers can feel the same way. They do not want to irritate the judge, especially one in front of whom they practice regularly.

Jurors hesitate to complain to the court; and as neophytes to the system, they are influenced by their perception of the will of the judge. In deciding on the competency of jurors to continue working, a trial judge should rely on more than tacit or even express agreement of jurors to continue. The trial judge should also use an objective test based upon his or her own judgment on the bench and experience in life dealing with the frailties of human beings.

A trial lawyer, whether prosecuting or defending, usually begins a jury trial before the first cup of coffee in the morning. Counsel is often excited, stressed, and high-strung before he or she arrives at the courthouse. The attorney has been mulling over voir dire, opening statements, cross-examination, and other trial tactics for days prior to the case. The advocate is anxious to have the battle begin and to "hit the first lick" so that the anxiety may subside.

When that lawyer has been trying a serious criminal trial all day long and into the night and the early morning hours, he or she is fatigued. Counsel may object when the issue should pass. Counsel may not object when an objection is proper. The lawyer misses issues, fails to preserve the record, forgets witnesses' pre-trial statements, and makes dozens of other human mistakes which would not occur if one was rested. As this record indicates, lawyers who have been trying a case all day oftentimes get argumentative toward the end of the day for little reason. Lawyers get testy and possibly may say things they should not say. The judge will often have to call them on the carpet. All this is done many times in front of the jurors who form impressions which have nothing to do with the proof of the case.

When we get tired, we often make statements that "look foolish on the record," to quote the judge in the case below during one such splenetic dialogue. A tired advocate sometimes does not know he or she is tired. One makes poor adversarial decisions when overcome with fatigue.

When a trial continues into the late night, other participants do not function to their optimal abilities. The judge gets tired, whether he or she admits it. The court reporter may make transcription errors that will not show up until appellate review. Clerks, bailiffs, and other court personnel must have clear minds to properly go about their duties. Witnesses cannot perform their function to the best of their

ability when they are weary after a long and stressful day. They should not have to testify when they ordinarily would be retiring. Many participants just want to get the case over with and go home. The trial judge, sitting neutral and detached, has the responsibility of ensuring that the general rule against late night sessions is not abrogated. The judge must regulate and assure that reasonable hours of litigation and jury deliberation are maintained. When the adversarial activities are concluded, the jurors' ultimate duties begin. They should very rarely deliberate into the early morning hours without proper rest.

Each defendant who is tried in a criminal courtroom in Tennessee is entitled to due process of law. U.S. Const. amend. XIV; Tenn.Const. art. I § 8. A defendant is entitled to a proper jury trial and the effective assistance of counsel. U.S. Const. amend. VI; Tenn.Const. art. I § 9. Regardless of the actions of the litigants or lawyers, the trial judge has the responsibility to make sure that these fundamental rights are protected. Unless this Court is convinced beyond a reasonable doubt that these rights have been protected, we cannot affirm a conviction, no matter how serious the charge.

We are ever so mindful that counsel for both sides have thoroughly prepared their cases; and they, just like the trial court and this Court, desire to have this matter concluded. Justice is due to the accuser just as much as to the accused. We also realize that trying a case for the second time, where one has worked diligently before, is akin to eating cold soup. Nonetheless we must ensure that no constitu-

tional rights of any party have been abridged.

We are unable in this case to say that appellant has waived his right to present this issue on appeal by not timely and expressly objecting at trial. Such a disposition would lead to an unfair result. We hold that plain error existed in the trial court's conducting the trial into the late night of April 5th and early morning hours of April 6, 1990. Rule 52(b), Tenn.R.Crim. P.; T.R.A.P. Rule 36(b). Appellant's contention as to this issue is meritorious, and a new trial must be ordered.

## THE REMAINING ISSUES

The other issues raised by the appellant concerning the prosecutor's remarks during closing argument, the alleged misconduct of the prosecutor and the comments of the trial judge, and the cumulative effect of the errors previously complained of, are rendered moot as a result of our holding in the previous issue. We need not address them in this opinion.

## CONCLUSION

For the reasons cited herein, the judgment of the trial court is reversed. This case is remanded for a new trial.

BIRCH, J., and WILLIAM H. INMAN, Special Judge, concur.