# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs December 1, 2023

## DAWN MARIE PENNINGTON v. JOEL DAVID PENNINGTON, III

**Appeal from the Chancery Court for Henry County**
**No. 25408     Bruce Irwin Griffey, Judge**

_____

### No. W2023-01691-COA-T10B-CV

_____

This is an accelerated interlocutory appeal as of right pursuant to Rule 10B of the Rules of the Supreme Court of Tennessee from the chancery court's denial of a motion to recuse. An attorney negotiated a settlement on behalf of a client in litigation over the administration of an estate. The same attorney subsequently assisted his client in the prior litigation in filing a related suit in which the party obtained default judgment. The Plaintiff in the present case is seeking to set aside that default judgment and to obtain other relief, asserting the Defendant acted unscrupulously in filing a suit on matters which had previously been settled. The trial judge reported the attorney, who is no longer the attorney representing the Defendant, to the Board of Professional Responsibility based on the filing of the suit which resulted in the default judgment. The Defendant seeks recusal of the trial judge, asserting that the judge's impartiality might reasonably be questioned. The judge denied the motion for recusal, finding that he could be fair and impartial, had not pre-judged any matters, and that a person of ordinary prudence would find no reasonable basis for questioning his impartiality. We affirm.

**Tenn. Sup. Ct. R. 10B Interlocutory Appeal as of Right; Judgment of the Chancery Court Affirmed**

JEFFREY USMAN, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and JOHN W. MCCLARTY, J., joined.

Charles C. Exum and Craig P. Sanders, Jackson, Tennessee, for the appellant, Joel David Pennington, III.

Colin B. Calhoun, Nashville, Tennessee, for the appellee, Dawn Marie Pennington.

**OPINION**

**I.**

The origins of the present dispute are found in prior litigation involving the administration of the estate of Joel David Pennington, Sr. (Mr. Pennington, Sr.).[1] Mr. Pennington, Sr. had a son named after him, Joel David Pennington, Jr. (Joel). The Plaintiff in the present case is Dawn Marie Pennington (Dawn); she was Joel's wife. After the birth of his son Joel, Mr. Pennington, Sr., married Gloria Pennington (Gloria) and adopted her son, who was renamed after Mr. Pennigton, Sr., as Joel David Pennington, III (David). In order to avoid confusion among the three Joel David Penningtons, we will refer to Joel David Pennington, Sr., as "Mr. Pennington, Sr.," to Joel David Pennington, Jr., as "Joel," and to Joel David Pennington, III, as "David." Similarly, with two Ms. Penningtons, we refer to Dawn Marie Pennington as Dawn, and Gloria Pennington as Gloria. We intend no disrespect to any of these individuals by the use of first names.

At the time of his death in 2008, Mr. Pennington, Sr., had filed a complaint for divorce against Gloria, which was pending. Joel served as the executor of Mr. Pennington, Sr.'s estate. The settlement of the estate of Mr. Pennington, Sr., turned acrimonious, with Gloria and her son David seeking to remove Joel as executor. However, the parties settled their dispute in August 2013. The complaint alleges that the settlement agreement covered "all matters in controversy in connection with" the estate of Mr. Pennington, Sr.

In 2015, David, nevertheless, filed suit against Joel and Joel's wife Dawn. According to the complaint in the present case, David's 2015 suit was filed by the same attorney who had represented David and Gloria in arriving at the earlier settlement agreement. The complaint alleges that the 2015 suit asserted claims for malfeasance in managing the estate, did not reference the prior settlement agreement, and did not make any allegations of misconduct against Dawn personally.

Dawn acknowledges she was served with the 2015 lawsuit. However, she alleges that Joel had become physically abusive of her, that he insisted on handling all correspondence and all documents associated with the suit, and that she was afraid to investigate the status of the lawsuit, although she was a named party. Based on Joel's representations to her, Dawn believed the 2015 suit had been resolved. Joel died in 2019. Dawn alleges that she discovered after the death of her husband that a default judgment had been entered against her on January 26, 2017, when a debt collector attempted to

---

[1] The facts recited here are taken from the Order Denying Recusal and the Complaint, which are attached to the petition for appeal. Page 3 of the trial court's order, from the section summarizing the facts, is missing.

collect $323,327.05. She alleges that David subsequently placed a lien on her home.

Dawn filed a complaint in August 2022, seeking a temporary restraining order and seeking to vacate, pursuant to Tennessee Rules of Civil Procedure 60.02(4) and (5), the default judgment that had been entered on January 26, 2017. She also asserted claims for fraud, abuse of process, and reckless and intentional infliction of emotional distress.

David filed a motion to dismiss and then filed a motion for recusal. The recusal motion stated that the trial judge had filed a complaint against David's former attorney with the Tennessee Board of Professional Responsibility (BPR) based on that attorney's act of filing the 2015 lawsuit in which David obtained default judgment against Dawn. David asserted that the BPR complaint suggested the judge had "made conclusions about the propriety of the underlying case and the default judgment," that the complaint committed the court to a result in the pending motion to dismiss, and that the judge's impartiality might reasonably be questioned by a person of ordinary prudence. David asserted the judge had more than a de minimis interest in the outcome of the case and had reviewed extraneous material and conducted an independent investigation by looking at documents pertaining to the underlying default judgment, which had been granted by a different judge. He sought recusal based on an "acrimonious relationship" between the judge and David's former counsel. The motion included the affidavit of one of David's attorneys, who stated David's former counsel "indicated that the board complaint evinces this Court's position that the underlying default judgment was obtained via some type of fraud or wrongdoing" and that David's current attorney believed the court reviewed documents pertaining to the default judgment.

Dawn opposed the recusal, noting that the judge had a duty to report a violation of the Rules of Professional Conduct. Dawn asserted that the judge was permitted to take judicial notice of the court's own records, that there was no indication the court had determined impropriety with respect to the default or committed to any particular result, and that there was no indication the judge had an interest in the outcome of the case. Dawn likened the judge's actions to an adverse ruling and argued that a person of ordinary prudence would find no basis to question the judge's impartiality.

A transcript of the recusal hearing, attached to the Rule 10B petition, reflects that the trial judge noted that he respected David's former attorney and "with some difficulty . . . and concern" felt he had the duty to make the report. The judge stated during the hearing that he felt compelled to report the attorney when he was reviewing documents and saw "that there was apparently a global settlement, and then all of a sudden there's a new complaint filed approximately a year later. . . ." He asserted that he had no personal animus and that he had recommended the attorney for a job previously. The judge noted he had a duty to hear cases and stated he had not prejudged the matter. He noted that he had not heard testimony on the issue David contended that he had already decided and expressed an openness to the conclusion that default judgment was appropriately obtained.

The trial judge ultimately entered an order denying the motion to recuse. Therein, the trial court judge observed that he had not "conclusively determined that impropriety or wrongdoing occurred in connection with the procurement of the underlying default judgment." The trial court further observed that reporting David's prior attorney to the Board of Professional Responsibility did not "commit the Court to a particular outcome in this case." The court noted that the reporting was in a related case and concluded that a disinterested person would not believe that the court's impartiality could reasonably be questioned. David appeals the trial court judge's denial of his motion to recuse.

## II.

Under section 2.01 of Rule 10B of the Tennessee Supreme Court, a party is entitled to "an accelerated interlocutory appeal as of right" of an order denying a motion to recuse. This court reviews a trial court's decision regarding a motion to recuse de novo. Tenn. Sup. Ct. R. 10B § 2.01; *Duke v. Duke*, 398 S.W.3d 665, 668 n.2 (Tenn. Ct. App. 2012) (noting that the Rule has altered the standard of review of recusal motions).

"Litigants in Tennessee have a fundamental right to a fair trial before an impartial tribunal." *State v. Griffin*, 610 S.W.3d 752, 757 (Tenn. 2020) (quoting *Holsclaw v. Ivy Hall Nursing Home, Inc.*, 530 S.W.3d 65, 69 (Tenn. 2017)). The public's confidence in the neutrality and impartiality of the judiciary is a significant interest, *Bean v. Bailey*, 280 S.W.3d 798, 803 (Tenn. 2009), and "[i]f the public is to maintain confidence in our system of justice, a litigant must be afforded . . . the 'cold neutrality of an impartial court.'" *State v. Cannon*, 254 S.W.3d 287, 307 (Tenn. 2008) (quoting *Davis v. Liberty Mut. Ins. Co.*, 38 S.W.3d 560, 564 (Tenn. 2001)).

"[T]he test for recusal requires a judge to disqualify himself or herself in any proceeding in which 'a person of ordinary prudence in the judge's position, knowing all of the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality.'" *Griffin*, 610 S.W.3d at 758 (quoting *Cannon*, 254 S.W.3d at 307). This test is objective rather than subjective because the appearance of bias harms the integrity of the court system as much as actual bias. *Cannon*, 254 S.W.3d at 307. "To act 'impartially' is to act in 'absence of bias or prejudice in favor of, or against, particular parties or classes of parties, as well as maintenance of an open mind in considering issues that may come before a judge.'" *Adams v. Dunavant*, 674 S.W.3d 871, 878 (Tenn. 2023) (quoting Tenn. Sup. Ct. R. 10, Terminology "Impartiality."). When a judge's impartiality might reasonably be questioned, recusal is warranted "[e]ven if a judge believes he [or she] can be fair and impartial." *Bean*, 280 S.W.3d at 805. The party moving for recusal bears the burden of presenting evidence that would prompt a reasonable, disinterested person to believe that there is a reasonable basis for questioning the judge's impartiality. *Duke*, 398 S.W.3d at 671.

Under Tennessee Supreme Court Rule 10, Canon 2, Rule 2.11(A)(1),

(A) A judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to the following circumstances:

(1) The judge has a personal bias or prejudice concerning a party or a party's lawyer, or personal knowledge of facts that are in dispute in the proceeding.

(2) The judge knows that the judge . . . is:
. . . .

(c) a person who has more than a de minimis interest that could be substantially affected by the proceeding; or
. . . .

(5) The judge, while a judge or a judicial candidate, has made a public statement, other than in a court proceeding, judicial decision, or opinion, that commits or appears to commit the judge to reach a particular result or rule in a particular way in the proceeding or controversy.

(6) The judge:
. . . .

(b) served in governmental employment, and in such capacity participated personally and substantially as a lawyer or public official concerning the proceeding, or has publicly expressed in such capacity an opinion concerning the merits of the particular matter in controversy;

Tenn. Sup. Ct. R. 10, RJC 2.11

David offers five arguments for why the trial court judge erred by denying his motion for recusal. One, he contends the trial court judge has an interest in the case. Two, he argues the trial court judge conducted its own independent investigation and considered extraneous materials in filing with the BPR, thereby creating an appearance of partiality. Three, he asserts an acrimonious relationship exists between the trial court judge and prior counsel. Four, he argues the trial court judge made a public criticism of prior counsel. Five, he maintains the totality of the circumstances creates an appearance of partiality. For various reasons addressed further below, none of these arguments are ultimately availing.

Citing Rule 2.11(A)(2)(c) and (A)(6)(b), David first asserts that the trial judge had

- 5 -

"more than a de minimis interest" in the outcome of the case because the judge "essentially advocated" Dawn's position that the default judgment was fraudulent. The interest alluded to in (A)(2)(c) need not be economic, *see* Tenn. Sup. Ct. R. 10, RJC 2.11(A)(3) (mandating recusal when the judge knows that the judge or other listed parties have an economic interest in the matter or are parties to the proceeding); however, it must be an interest substantially affected by the proceeding. *See Reichert v. State ex rel. McCulloch*, 278 P.3d 455, 469-70 (Mont. 2012) (concluding that non-retiring justices were not required to recuse from considering legislation regarding judicial elections because it was conjecture to suppose that the new system would help or hinder their chances of reelection); *Presbyterian Church (U.S.A) v. Edwards*, 594 S.W.3d 199, 204 (Ky. 2018) (concluding that a justice's spouse's affiliation with a law firm did not constitute more than a de minimis interest when the spouse's remuneration was not tied to the success of the case and any enhancement of reputation or goodwill would be minimal); *Gardner v. Lee*, No. 2003-CA-002230-MR, 2005 WL 119839, at *4 (Ky. Ct. App. Jan. 21, 2005) (concluding the judge should have recused for reasons including that her cousin was the mayor and thus had a significant interest in the outcome of an action against that governmental entity). The interest at stake must not be speculative; "[a] merely theoretical interest in the issue at bar is insufficient." *Betts-Lucas v. Hartmann*, 87 S.W.3d 310, 329 (Mo. Ct. App. 2002).

Here, David has not demonstrated that the trial judge had any personal stake at all in the outcome of the proceeding seeking to set aside the default judgment. His factual assertion is more akin to a contention the judge had already decided the issue. Accordingly, the judge did not err in refusing to recuse on the basis that he had more than a de minimis interest in the result. Likewise, the judge did not previously participate "personally and substantially as a lawyer or public official concerning the proceeding." Instead, the judge, while acting as a judge, made a referral to the BPR. Accordingly, David is not entitled to relief based upon these arguments.

David next asserts that the court reviewed extraneous materials and conducted an independent investigation, and that this has led to an appearance of partiality. *See Holsclaw*, 530 S.W.3d at 72-73 (concluding that the judge's ex parte communication and independent investigation regarding qualification of an expert did not require recusal when there was no appearance of partiality). David does not on appeal specify what "extrajudicial" materials he alleges the judge reviewed. The allegations in the affidavit attached to the motion to recuse assert counsel's belief that the court "viewed documents pertaining to the underlying default judgment." However, a court's own records are subject to judicial notice. Tenn. R. Evid. 201(b), (c) (allowing a court, whether requested or not, to take notice of facts "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned"); *State v. Lawson*, 291 S.W.3d 864, 869 (Tenn. 2009) ("Facts relating to the operation of the courts, matters occurring within the immediate trial or appeal, or developments in a prior trial or prior proceedings all have been subject to judicial notice."); *Tennessean v. Metro. Gov't of Nashville*, 485 S.W.3d 857, 862 n.5 (Tenn. 2016) (the Tennessee Supreme Court "may take judicial notice of the

records of the courts of this state"). Accordingly, a review of the court's own records was not an improper independent investigation giving the appearance of partiality, and the judge did not err in refusing to recuse himself on this basis.

Third, David asserts that the BPR complaint demonstrates an acrimonious relationship with prior counsel, and that the BPR complaint was a personal criticism of the attorney which would lead to reasonable questions regarding the judge's impartiality. David cites to *Bean v. Bailey*, in which the Tennessee Supreme Court concluded that the trial judge was required to recuse based on an acrimonious history with trial counsel. 280 S.W.3d at 805-06. In *Bean*, the judge had allegedly threatened adverse results for the attorney's clients if the attorney did not try to influence the newly elected District Attorney General; the judge had reported the attorney to the Tennessee Bureau of Investigation for alleged criminal conduct or unethical behavior twice (resulting in no action by the TBI); the judge filed three complaints, all dismissed, against the attorney with the BPR; the attorney filed a complaint against the judge, which was found to be meritorious; and the public was aware of the parties' hostility. *Id.* at 800-02. In the present case, the judge reported David's former counsel to the BPR, suspecting a violation of the Rules of Professional Conduct. This single instance of making a report is not comparable to the extended and deep-seated antagonism catalogued in *Bean*. Furthermore, the trial court judge in the present case went so far to observe regarding prior counsel that "I've known [him] for a long time. I very much respect him and think he is an excellent attorney. He's extremely bright and sharp with the law . . . ." We note that David's former attorney is not representing him in the present case. There is simply no showing of the type of animosity towards prior counsel that existed in *Bean*. Nor are there indicators of any animosity bleeding over into to the present case that provide a sufficient basis to require recusal in this case in which prior counsel is not even representing the Defendant. *E.g., State v. Schiefelbein*, 230 S.W.3d 88, 136-37 (Tenn. Crim. App. 2007) (recusal was required when the judge had a "punitive" reaction (reporting counsel to the BPR) to a relatively benign statement (opining the judged had erred) by former counsel; restricted discovery; failed to place findings and reasons for denying recusal on the record; and examined the victim to bolster her credibility).

Fourth, David also asserts that recusal was necessary because the judge had "made a public statement, other than in a court proceeding, judicial decision, or opinion," that appeared to commit the judge "to reach a particular result or rule in a particular way in the proceeding or controversy." Tenn. Sup. Ct. R. 10, RJC 2.11(A)(5). Dawn counters that reporting David's former counsel to the BPR did not constitute a public statement, since such reports are confidential. David does not assert that the judge made any statement other than the report to the BPR, and all information submitted to the BPR "shall be confidential and privileged, and shall not be public records or open for public inspection." Tenn. Sup. Ct. R. 9, § 32.1. Accordingly, the judge's actions are not governed by Rule 2.11(A)(5), and it was not error to deny the recusal motion on this basis.

David finally asserts that the judge erred in denying the motion for recusal because judge's impartiality might reasonably be questioned based on the totality of the circumstances. He notes that the specific provisions in Rule 10 listed above are not exclusive. *Cook v. State*, 606 S.W.3d 247, 254 (Tenn. 2020) (noting the examples are illustrative and not exclusive and that a court should disqualify itself when its impartiality might reasonably be questioned).

In this case, the challenged conduct is the judge's act of reporting a litigant's prior attorney to the BPR for filing a complaint in a matter subject to a prior global settlement. *See* Tenn. Sup. Ct. R. 10, RJC 2.15(B), (D) ("A judge having knowledge that a lawyer has committed a violation of the Rules of Professional Conduct that raises a substantial question regarding the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects shall inform the appropriate authority," and "[a] judge who receives information indicating a substantial likelihood that a lawyer has committed a violation of the Rules of Professional Conduct shall take appropriate action."). The complaint filed by the former attorney resulted in the default judgment that is being challenged in the present case.

Recusal is not automatically required simply because of the filing of a complaint alleging unethical or unprofessional conduct. This is true where a party files a complaint about a judge. *See Salas v. Rosdeutscher*, No. M2021-00157-COA-T10B-CV, 2021 WL 830009, at *3 (Tenn. Ct. App. Mar. 4, 2021) (noting that "the judicial disqualification standards do not require recusal simply because the person seeking recusal has filed some type of complaint against the judge"); *In re Adison P.*, No. W2015-00393-COA-T10B-CV, 2015 WL 1869456, at *6 n.7 (Tenn. Ct. App. Apr. 21, 2015); *State v. Parton*, 817 S.W.2d 28, 30 (Tenn. Crim. App. 1991) (there was no evidence of bias based on the defendant's filing a complaint with the board of judicial conduct); *see also Moncier v. Bd. of Prof'l Responsibility*, 406 S.W.3d 139, 162 (Tenn. 2013) (collecting cases in which recusal was not required when a litigant sued a judge). This is also true when the complainant is the judge whose recusal is at issue and the complaint is about the attorney for a party in the litigation before the judge. *Cone v. Cone*, No. M2008-02303-COA-R3-CV, 2010 WL 1730129, at *18 (Tenn. Ct. App. Apr. 29, 2010) (no abuse of discretion in denying recusal when the court expressed an intention to report an attorney to the board based on the belief, drawn from allegedly seeing the attorney hold a client's hand during a hearing, that the attorney was having an inappropriate relationship); *see Watson v. Cal-Three, LLC*, 254 P.3d 1189, 1192 (Colo. App. 2011) (trial judge did not abuse her discretion in failing to recuse after she reported an attorney for violation of professional rules because "[w]hile the better practice would have been for the court either to inform [the attorney] of her report before entering judgment or wait to report any unethical behavior until after entry of judgment," the judge "acted in accordance with her duties"); *OneWest Bank, FSB v. Walsh*, No. 1-12-0111, 2013 WL 6061644, at *4 (Ill. App. Ct. Nov. 15, 2013) ("[B]ecause the trial judge acted based upon his ethical duty to report attorney misconduct and facts discovered during the course of the proceeding, . . . the[] claim that [litigants] were denied an impartial hearing before an impartial tribunal must fail.").

Likewise, a prior adverse determination on an issue does not amount to bias or a lack of partiality. Embracing David's argument would require recusal of trial judges in cases in which, for example, a motion for summary judgment had been granted and this court reversed after concluding that sufficient evidence existed for the case to proceed. That has never been the understanding of this court. The *In re Estate of Miller* case, wherein the appellant asserted that the court's prior erroneous granting of summary judgment demonstrated bias and showed that the judge had prejudged the issues on remand after an appeal, reflects this court's contrary understanding to the position advanced by David. No. E2018-00658-COA-T10B-CV, 2018 WL 1989610, at *1 (Tenn. Ct. App. Apr. 27, 2018). The *In re Estate of Miller* court held the trial court did not err by declining to recuse, particularly because the prior decision did not rise from extrajudicial information. *Id.* at *2.

Similarly, in *Davis v. Liberty Mutual Insurance Company*, the judge had, in a prior opinion, noted that the plaintiff's expert had no active psychiatry practice, had left practice in another state "under something of a cloud," and was used "to an unusual extent" by plaintiff's counsel. 38 S.W.3d at 563-64. The Tennessee Supreme Court concluded that recusal was not required because "the mere fact that a judge has ruled adversely to a party or witness in a prior judicial proceeding is not grounds for recusal." *Id.* at 565; *see also Alley v. State*, 882 S.W.2d 810, 821 (Tenn. Crim. App. 1994) (adverse rulings, "even if erroneous, numerous and continuous, do not, without more, justify disqualification").

Likewise, in *Adams v. Dunavant*, a law firm claimed an interest in interpleaded trust distributions in the case before the trial judge, and the judge had expressed his opinion as an expert witness in a separate case prior to taking the bench that the fees of the law firm were "outrageous and clearly excessive." 674 S.W.3d 871, 874-75 (Tenn. 2023). The Tennessee Supreme Court concluded recusal was not required because the prior expert opinion "concerned a different case and distinct legal questions." *Id.* at 879-80; *see Bailey v. Champion Window Co. Tri-Cities, LLC*, 236 S.W.3d 168, 171 (Tenn. Ct. App. 2007) (the judge had previously and erroneously found a party in contempt); *see also OneWest Bank, FSB*, 2013 WL 6061644, at *4 ("A trial judge's previous rulings are almost never a valid basis for a claim of judicial bias."). The Tennessee Supreme Court has observed that "[i]f the rule were otherwise, recusal would be required as a matter of course since trial courts necessarily rule against parties and witnesses in every case, and litigants could manipulate the impartiality issue for strategic advantage, which the courts frown upon." *Davis*, 38 S.W.3d at 565; *see Liteky v. United States*, 510 U.S. 540, 551 (1994) ("Impartiality is not gullibility. Disinterestedness does not mean child-like innocence. If the judge did not form judgments of the actors in those court-house dramas called trials, he could never render decisions." (quoting *In re J.P. Linahan, Inc.*, 138 F.2d 650, 654 (2d Cir.1943))).

Here, the trial judge explained that he reported prior counsel to the BPR because he

believed that the attorney may have violated the Rules of Professional Conduct in filing David's 2015 lawsuit. The issue before the court is whether the default judgment obtained through that lawsuit should be set aside several years later under Tennessee Rules of Civil Procedure 60.02(4) and (5) and whether Dawn is entitled to relief for the tort claims asserted. According to the filings, David filed a motion to dismiss based on the statute of limitations and based on the procedural mechanism employed. While the issues are adjacent, they are not the same, nor is the trial judge's knowledge from an extrajudicial source.

Furthermore, the trial court judge clearly indicated that he has not reached any decision on the question as to whether the default should have been obtained. At the hearing on the motion to recuse, the trial judge specifically noted the following:

> Mr. Johnson [(prior counsel for the Defendant)] may come in here and there may be a perfectly logical reason why we're at the status that we are in this litigation. I don't know. The Court doesn't know. He hasn't heard from Mr. Johnson and that side, so the Court certainly has not made any determination.

Additionally, in his order denying the motion to recuse, the trial court judge emphasized that no decision had been reached by the court on the propriety of obtaining the default judgment.

Under these circumstances, we cannot conclude that the trial judge erred by determining that a person of ordinary prudence would not find a reasonable basis for questioning the judge's impartiality. *See Griffin*, 610 S.W.3d at 758. Accordingly, we affirm the trial court's denial of the recusal.

## CONCLUSION

In considering the arguments advanced on appeal and for the reasons discussed above, we affirm the judgment of the trial court. The costs of the appeal are taxed to the appellant, Joel David Pennington, III, for which execution may issue if necessary. The case is remanded for such further proceedings as may be necessary and consistent with this opinion.

_____
JEFFREY USMAN, JUDGE