IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
June 9, 2015 Session

## STATE OF TENNESSEE v. GARY MITCHELL HESTAND

**Appeal from the Criminal Court for Clay County**
**No. 2013-CR-39     Leon C. Burns, Jr., Judge**

---

**No. M2014-02208-CCA-R3-CD – Filed October 7, 2015**

---

The Defendant-Appellant, Gary Mitchell Hestand, was convicted by a Clay County jury of assault upon a law enforcement officer, a Class A misdemeanor, and resisting arrest, a Class B misdemeanor. The trial court imposed an effective sentence of eleven months and twenty-nine days, suspended to supervised probation. On appeal, the Defendant argues that: (1) the trial court erred by refusing to grant a new trial based on destroyed evidence; (2) the trial court erred by not allowing the Defendant to deploy a taser for demonstrative purposes; (3) the evidence is insufficient to support his convictions; (4) the trial court erred by not setting reasonable time limits for the length of the trial days; and (5) the trial court abused its discretion in not dismissing a biased juror for cause. Discerning no error, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which THOMAS T. WOODALL, P.J., and JOHN EVERETT WILLIAMS, J., joined.

Richard M. Brooks, Carthage, Tennessee, for the Defendant-Appellant, Gary Mitchell Hestand.

Herbert H. Slatery III, Attorney General and Reporter; Andrew C. Coulam, Assistant Attorney General; Randall A. York, District Attorney General; and Mark E. Gore, Deputy District Attorney General, for the Appellee, State of Tennessee.

## OPINION

A Clay County Grand Jury returned a four-count indictment charging the Defendant-Appellant, Gary Mitchell Hestand, with driving under the influence (DUI),

first offense, resisting arrest, assault upon a law enforcement officer, and theft of property valued at $500 or less.  The following proof was adduced at trial.[1]

**State's Proof.**  Chief Deputy Rick Lisi of the Clay County Sheriff's Department testified that on June 15, 2012, he was transporting two inmates to Overton County.  As he was traveling southbound over a hill on Highway 53, he observed a white vehicle on the opposite side of the road going backward down the hill "in a serpentine kind of fashion."  He noticed other motorists crossing the center line in the two-lane road to avoid the vehicle.  Because Deputy Lisi was concerned about a possible accident, he activated his blue lights and parked at the side of the road to warn oncoming traffic to slow down.  When the white vehicle continued to move downhill in the wrong direction, Deputy Lisi made a U-turn and pulled up behind it.  He said that the vehicle kept rolling, and he had to reverse his car to avoid being hit.  The white vehicle then backed into the side of the road, and Deputy Lisi pulled up beside it.  He identified the Defendant as the driver.

According to Deputy Lisi, both he and the Defendant had their car windows down.  He asked the Defendant if everything was alright but received no response.  Even though his blue lights were on, the Defendant did not acknowledge his presence.  Deputy Lisi raised his voice in case he was not heard.  He did not want to exit his vehicle because there were two inmates in the back.  He continued to attempt to make verbal contact with the Defendant and his passenger, but was unsuccessful.  Deputy Lisi called for backup to investigate a possible DUI situation.  He then observed the driver and passenger speak to one another, and the passenger proceeded to exit the vehicle.  He instructed the men to remain in their vehicle because he wanted to contain the situation until another deputy arrived.  In response, the Defendant turned toward Deputy Lisi and stated something indiscernible.  Deputy Lisi observed that the Defendant had watery eyes and was red-faced and sweaty.  He also thought the situation was problematic because the Defendant provided no response or assurances that he did not need help.

Deputy Lisi said that his senses were heightened because he wanted to maintain control of the traffic, the men in the vehicle, and the inmates.  When he repeated his warning to the passenger to stay in the car, the Defendant responded with vulgar language and began to exit the vehicle.  According to Deputy Lisi, the Defendant stated, "'You don't talk to my dad that way. . . .  I'm going to kick you . . .'"  The situation rapidly escalated, and Deputy Lisi was concerned that the Defendant had a weapon.  He ordered the Defendant and his father to show their hands.  As he exited his vehicle, the Defendant began to charge at him.  Deputy Lisi observed that the Defendant was not armed but that he had an object that he wanted to throw.  Deputy Lisi reached for his

---

[1] The record reflects that sixteen witnesses testified at trial.  We only address the testimony that is relevant to the issues that the Defendant raised on appeal.

taser and ordered the Defendant to stop. When the Defendant was a few feet away, he threw a plastic Pepsi bottle at the deputy. Deputy Lisi attempted to deflect the bottle, but it hit the side of his head. At that point, he also deployed his taser as the Defendant charged at him. He said that the taser had no effect because it did not make contact with the Defendant's skin.

Deputy Lisi stated that the Defendant continued to swing at him. As he was fending off the blows, he observed the Defendant run across the highway. He ordered the Defendant to stop, and he had to dodge traffic as he chased after him. Deputy Lisi testified that his goal was to take the Defendant into custody at this point. He commanded, "Halt, stop, you're under arrest." However, the Defendant did not comply with his orders. When they were across the road, the Defendant swung violently at the deputy, and the two men engaged in a fist fight. During the scuffle, the Defendant was tackled to the ground, and Deputy Lisi tried to handcuff him without success. Another deputy arrived and shot a taser into the Defendant's forearm with immediate effectiveness. The Defendant complied with the arrest and complained that he could not breathe. Deputy Lisi then sat the Defendant up and called an ambulance. He stated that the Defendant was very combative and refused medical assistance from emergency responders. The Defendant was then brought to the jail.

Deputy Lisi remained at the scene to collect evidence and to search the Defendant's vehicle. He found street signs, a cup, and a nearly empty whiskey bottle inside the car. The signs represented roads in Clay County and appeared to have been ripped from their posts. Two prescription pill bottles were also recovered from the Defendant at the jail. During an interview, the Defendant told Deputy Lisi that he had taken his medication earlier in the day. He agreed to submit to a blood test. A booking photograph of the Defendant and a video recording of the stop were admitted into evidence and shown to the jury.

On cross-examination, Deputy Lisi said that his vehicle was unmarked, though the front and back lights were flashing. He conceded that according to the official TBI report, the Defendant did not have alcohol in his system. He agreed that he did not have probable cause to arrest the Defendant until the Pepsi bottle was thrown at him. When asked where the bottle was, Deputy Lisi stated that it had been run over by a motorist on the highway. He said that the bottle was half-empty and that it sounded like a gunshot when it was crushed. He did not collect the bottle as evidence because "[i]t was smashed." He acknowledged that the street signs found in the car were not marked as Clay County property.

Special Agent April Bramlage, a forensic scientist with the TBI Nashville Crime Laboratory, testified as an expert witness in toxicology. She performed the drug analysis

-3-

of the Defendant's blood sample after another agent completed the alcohol analysis. The result of the blood alcohol test was negative. The drug analysis revealed the presence of nordiazepam, diazepam, trazodone, methadone, and chlorpheniramine. Agent Bramlage explained that nordiazepam and diazepam, also known as Valium, were anti-anxiety medications that were present in the Defendant's blood within therapeutic levels. She said that trazodone was an anti-depressant medication, though her instrument could not measure the precise amount. Methadone, a synthetic opiate, and chlorpheniramine, an antihistamine, were present at less than 0.05 micrograms per milliliter. Agent Bramlage prepared an official toxicology report, which was admitted into evidence.

Ernest Garrison testified that he was the road superintendent in Clay County. It was his job to maintain the roads and replace street signs. He estimated that three hundred road signs had been stolen in the past few years. He said that four of the five signs recovered from the Defendant's vehicle represented roads in Clay County. He stated that the total value of these signs was about forty dollars.

Deputy Daniel Marquess of the Clay County Sheriff's Department testified that at about 1:35 p.m. on June 15, 2012, he was dispatched to the Defendant's location on Highway 53. He was called to investigate a possible DUI and to relieve Deputy Lisi. As he was traveling up the hill, he heard Deputy Lisi command the Defendant to stop and show his hands. He then activated his blue lights and the video recording system in his patrol car. Deputy Marquess observed the Defendant exit his vehicle and advance toward Deputy Lisi "in an aggressive manner." He also saw the Defendant throw a Pepsi bottle at Deputy Lisi. He then parked and exited his patrol car as Deputy Lisi chased the Defendant across the road. He said that the two men were fighting and had "landed in the drainage ditch on the other side of the road[.]" Deputy Marquess said that he deployed his taser because the Defendant did not comply with the arrest. He succeeded in subduing the Defendant, who was then handcuffed by Deputy Lisi. Deputy Marquess said that he transported the Defendant to the Sheriff's Office for booking.

Tristan Dailey testified that he was an inmate in Deputy Lisi's vehicle at the time of these events. He was seated on the right side in the back and could see the entire incident involving the Defendant and Deputy Lisi. He testified, in large part, consistently with the testimony of the deputy.

**Defense's Proof.** The fifty-one-year-old Defendant testified on his own behalf. He said that he was born and raised in Clay County and that he was a disabled Navy veteran. He explained that he had training and work experience in law enforcement. The Defendant described his various physical impairments and preexisting injuries, including four traumatic brain injuries and a broken back. He also said that he had less than ten percent hearing in one ear and only about forty percent hearing in the other ear. He took

multiple medications for his ailments, including pills for pain, allergies, high blood pressure, anxiety, and thyroid problems.

On June 15, 2012, the Defendant took his morning medications and prepared to drive to Cookeville with his father to purchase tractor parts. He usually drove a pickup truck, but he was driving his daughter's 2001 Mercury Cougar that day because the car had been giving her problems. As he traveled up a hill, the car completely broke down. The Defendant said that he maneuvered the car back about twenty feet and moved it to the side of the road. He stated that several people stopped and offered assistance, which he refused. He said he was sweating in the 90-degree weather and that he had watery eyes due to severe allergies.

As the Defendant was trying to start his car, Deputy Lisi arrived up the hill. He stated that Deputy Lisi pulled up beside him, though he could not hear what the deputy said. When Deputy Lisi asked what was wrong, the Defendant told him that the car would not start. He said that he paid more attention to the car than to the deputy. He did not see any blue lights on Deputy Lisi's vehicle.

The Defendant's eighty-four-year-old father, who was hard of hearing and who previously had bladder cancer, exited the car to use the bathroom. According to the Defendant, Deputy Lisi began "hollering" but his elderly father did not hear the command to remain in the car. As a result, Deputy Lisi "jump[ed] out of the car, yank[ed] his taser" and ran toward the Defendant's father. The Defendant then opened his car door and told Deputy Lisi that he had no right to disrespect his father. He exited his car because the deputy was pointing a taser at his father. He then threw an empty plastic bottle at Deputy Lisi to distract him. He denied that the bottle came close to Deputy Lisi.

The Defendant said that the deputy then tased him, and it felt "like being wrapped up in [an] electric fence wire." He tried to run away because he felt as though he had been set on fire. The Defendant stated that Deputy Lisi chased him across the road. He testified that "before [he] ever hit the ground, the other guy [Deputy Marquess] jumped out and shot [him] with a taser again[.]" He said he then "took about two steps backwards" and fell and twisted his right ankle after tripping on some concrete. The Defendant stated that both deputies were on his back, and he could not move his hand to comply with their orders. Once he was able to move his hand out, Deputy Lisi restrained him with "torture type handcuffs[.]" He said that he was flat on his stomach and that he could not breathe due to his weight, which was about 350 pounds at the time. The Defendant was then propped up and checked by emergency responders. He said that he refused further treatment because EMS would not transport him to a hospital of his choice.

The Defendant testified that Deputy Marquess brought him to the jail and that he observed Deputy Lisi pick up the plastic bottle that he had thrown. He did not know anything about the road signs and denied ever seeing them in his daughter's car. He said that he had not had a drink in ten years and that the whiskey bottle did not belong to him. After he left the jail, his wife took him to the hospital.

Based on the above evidence, the jury convicted the Defendant of assault and resisting arrest as charged and acquitted him of driving under the influence and theft of property. The trial court sentenced the Defendant to concurrent probated sentences of eleven months, twenty-nine days for the assault and five months, twenty-nine days for resisting arrest. After the denial of the Defendant's motion for new trial, this appeal followed.

## ANALYSIS

On appeal, the Defendant challenges the sufficiency of the convicting evidence and alleges that the trial court committed multiple errors. For various reasons, the State argues that many of the Defendant's issues are waived. We will address each issue in turn, along with the State's specific waiver arguments.

**I. Failure to Preserve Evidence.** The Defendant first contends that he is entitled to a new trial pursuant to State v. Ferguson, 2 S.W.3d 912 (Tenn. 1999), because the State failed to preserve the plastic soda bottle that was thrown at Deputy Lisi. He claims that the missing evidence would have played a significant role in his defense because "[i]f the bottle had been preserved and available for inspection by the jury during trial, the outcome of the assault charge would have been different." Consequently, he asserts that "the trial court erred in not dismissing this case or giving an applicable jury instruction."

In response, the State argues that the issue is waived because the Defendant failed to raise a Ferguson claim at any time prior to his amended motion for new trial. The State further asserts that the Defendant is not entitled to plain error relief and that the plastic bottle had no exculpatory value. We agree with the State.

State v. Ferguson governs claims regarding the State's duty to preserve potentially exculpatory evidence. 2 S.W.3d 912 (Tenn. 1999). The proper inquiry is "'[w]hether a trial, conducted without the [lost or] destroyed evidence, would be fundamentally fair[.]'" State v. Merriman, 410 S.W.3d 779, 785 (Tenn. 2013) (quoting Ferguson, 2 S.W.3d at 914). "Generally speaking, the State has a duty to preserve all evidence subject to discovery and inspection under Tennessee Rule of Criminal Procedure 16, or other

-6-

applicable law." Id. at 917 (internal footnote omitted). The analysis under Ferguson is only triggered, however, if the alleged exculpatory evidence is determined to be material. Id. To be material, the "evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." Id.

Once the court determines that the evidence is material and the State failed in its duty to preserve the evidence, Ferguson requires the trial court to consider the following factors which bear upon the consequences of the State's breach of its duty: (1) the degree of negligence involved, (2) the significance of the destroyed evidence, considered in light of the probative value and reliability of secondary or substitute evidence that remains available, and (3) the sufficiency of the other evidence used at trial to support the conviction." Id. (internal footnote omitted). If the trial court, after considering these factors, determines that the trial would not be fundamentally fair, then the court may dismiss the charges. Merriman, 410 S.W.3d at 785.

Initially, we agree with the State that the Defendant waived this issue. Prior to his amended motion for new trial, the Defendant never asserted that his case should be dismissed or that he was entitled to an appropriate jury instruction because of lost or destroyed evidence pursuant to Ferguson. Relief on appeal is typically not available when a party is "responsible for an error" or has "failed to take whatever action was reasonably available to prevent or nullify the harmful effect of any error." See Tenn. R. App. P. 36(a). The record reflects that the Defendant raised the missing evidence issue for the first time in his amended motion for new trial, which was filed two months after his trial. In the motion, the Defendant argued as follows:

> The Court erred in that Officer Lisi has stated in a separate Motion hearing that the plastic drink bottle was in the evidence room at the Clay County Sheriff's Department. Then during the trial, he testified that he did not have the plastic drink bottle.

However, we are unable to review the trial court's ruling in this matter because the Defendant failed to include the transcript from the motion for new trial hearing in the record on appeal. The appellant has a duty to prepare a record that conveys "a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal." Tenn. R. App. P. 24(b). The appellant risks waiving the issues on appeal if an incomplete record is submitted to this court. State v. Ballard, 855 S.W.2d 557, 560 (Tenn. 1993). "In the absence of an adequate record on appeal, we must presume that the trial court's ruling was supported by the evidence." State v. Bibbs, 806 S.W.2d 786, 790 (Tenn. Crim. App. 1991) (citing Smith v. State, 584 S.W.2d 811, 812

-7-

(Tenn. Crim. App. 1979); Vermilye v. State, 584 S.W.2d 226, 230 (Tenn. Crim. App. 1979)). Consequently, we cannot conclude that the trial court erred with regard to the missing evidence.

Waiver notwithstanding, we fail to see how the plastic soda bottle would have been exculpatory. It is undisputed that the Defendant threw a plastic bottle at the deputy. Here, the Defendant's argument amounts to no more than speculation that the bottle recovered by the deputies would have in some way yielded exculpatory evidence had it been subject to jury inspection. We have previously stated that "the mere possibility of exculpatory content does not trigger a finding that the State failed in its general duty to preserve evidence under Ferguson." State v. Ronnie D. Sims, No. M2004-02491-CCA-R3-CD, 2005 WL 3132441, at *8 (Tenn. Crim. App. Sept. 21, 2005), perm. app. denied (Tenn. Mar. 20, 2006) (citing State v. Coulter, 67 S.W.3d 3, 54-55 (Tenn. Crim. App. 2001)). Moreover, the record does not reveal anything unique about the plastic soda bottle that would have prevented the Defendant from obtaining and producing a similar plastic soda bottle during trial. We conclude that the plastic bottle was not exculpatory; therefore, it is not necessary to engage in any further analysis under Ferguson. The Defendant is not entitled to relief on this issue.

**II. Demonstrative Evidence.** Next, the Defendant argues that the trial court committed reversible error by refusing to allow Deputy Lisi to demonstrate the use of his taser. He asserts that "the demonstration of the taser is relevant because . . . [the jury] could have determined if Defendant/Appellant's reaction was voluntary or involuntary, the damage a taser causes, and how long the effects of the taser lasts [sic]." The State responds that the demonstration was irrelevant evidence that the trial court properly excluded. We agree with the State.

"Generally, the admissibility of evidence rests within the trial court's sound discretion, and the appellate court does not interfere with the exercise of that discretion unless a clear abuse appears on the face of the record." State v. Franklin, 308 S.W.3d 799, 809 (Tenn. 2010) (citing State v. Lewis, 235 S.W.3d 136, 141 (Tenn. 2007)). A trial court is found to have abused its discretion when it applies "an incorrect legal standard or reaches a conclusion that is 'illogical or unreasonable and causes an injustice to the party complaining.'" Lewis, 235 S.W.3d at 141 (quoting State v. Ruiz, 204 S.W.3d 772, 778 (Tenn. 2006)).

"'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. Tennessee Rule of Evidence 402 provides that "[a]ll relevant evidence is admissible except as [otherwise] provided. . . . Evidence which is not relevant is not admissible." Id. at 402. However,

even relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Id. at 403.

During defense counsel's cross-examination of Deputy Lisi, the following exchange occurred:

Q.      Okay. Are you familiar with the taser policy for Clay County; right?

A.      Yes, sir, I am.

Q.      Did you bring your taser with you?

A.      Yes, sir, I did.

Q.      Do you mind doing a demonstration for us?

[STATE]:      Your Honor --

[COURT]:      We're not going to have a demonstration, [defense counsel].

Q.      It's a pain mechanism, is it not?

A.      It's a neural muscle incapacitator.

Q.      And you send 50,000 volts into a person initially, and every time you pop that thing, it's another 50,000, isn't it?

A.      No, sir.

Q.      It's not?

A.      No, sir.

Q.      Have you been shot with a taser?

A.      Six times, sir.

In his amended motion for new trial, the Defendant argued that "[t]he

demonstration would have enlightened the jury as to the pain inflicted by Officer Lisi." As previously mentioned, the motion for new trial hearing transcript is not included in the appellate record, and we therefore presume that the trial court properly ruled on this issue. See Bibbs, 806 S.W.2d at 790; Vermilye, 584 S.W.2d at 230. Moreover, we fail to see how Deputy Lisi's taser demonstration would have negated the elements of the offenses charged in this case. In other words, showing how a taser is deployed would not have made the fact of the Defendant's pain or subsequent actions any more or less probable. Finally, in light of the eyewitness testimony surrounding the circumstances of the taser use and the Defendant's arrest, the Defendant cannot show that any erroneous exclusion of the demonstrative evidence "more probably than not affected the outcome of the trial." See State v. Rodriguez, 254 S.W.3d 361, 372 (Tenn. 2008) (when assessing the impact of a non-constitutional error, the reviewing court may appropriately consider the properly admitted evidence of a defendant's guilt). Accordingly, the Defendant is not entitled to relief on this issue.

**III. Sufficiency of the Evidence.** Based on the alleged errors in the previous two issues, the Defendant contends that the evidence is insufficient to sustain his convictions. He asserts that the admission of the plastic soda bottle and the taser demonstration would have established a reasonable doubt as to his culpability. The State responds that there was sufficient evidence for a jury to find beyond a reasonable doubt that the Defendant assaulted an officer and resisted arrest. We agree with the State.

The State, on appeal, is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn from that evidence. State v. Davis, 354 S.W.3d 718, 729 (Tenn. 2011) (citing State v. Majors, 318 S.W.3d 850, 857 (Tenn. 2010)). When a defendant challenges the sufficiency of the evidence, the standard of review applied by this court is "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). Similarly, Rule 13(e) of the Tennessee Rules of Appellate Procedure states, "Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the finding by the trier of fact of guilt beyond a reasonable doubt." "Because a verdict of guilt removes the presumption of innocence and raises a presumption of guilt, the criminal defendant bears the burden on appeal of showing that the evidence was legally insufficient to sustain a guilty verdict." State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009).

Guilt may be found beyond a reasonable doubt where there is direct evidence, circumstantial evidence, or a combination of the two. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990) (citing State v. Brown, 551 S.W.2d 329, 331 (Tenn. 1977); Farmer v. State, 343 S.W.2d 895, 897 (Tenn. 1961)). The standard of review for

sufficiency of the evidence "'is the same whether the conviction is based upon direct or circumstantial evidence.'" State v. Dorantes, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009)). The jury as the trier of fact must evaluate the credibility of the witnesses, determine the weight given to witnesses' testimony, and reconcile all conflicts in the evidence. State v. Campbell, 245 S.W.3d 331, 335 (Tenn. 2008) (citing Byrge v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978)). Moreover, the jury determines the weight to be given to circumstantial evidence and the inferences to be drawn from this evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence are questions primarily for the jury. Dorantes, 331 S.W.3d at 379 (citing State v. Rice, 184 S.W.3d 646, 662 (Tenn. 2006)). When considering the sufficiency of the evidence, this court shall not reweigh the evidence or substitute its inferences for those drawn by the trier of fact. Id.

Here, the Defendant was convicted of assault upon a law enforcement officer and resisting arrest. To sustain the assault conviction, the State was required to show that the Defendant "[i]ntentionally or knowingly cause[d] another to reasonably fear imminent bodily injury[.]" T.C.A. § 39-13-101(a)(2) (2012). "'Intentional' means that a person acts intentionally with respect to the nature of the conduct or to a result of the conduct when it is the person's conscious objective or desire to engage in the conduct or cause the result[.]" Id. § 39-11-106(a)(18). "'Knowing' means that a person acts knowingly with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist. A person acts knowingly with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result[.]" Id. § 39-11-106(a)(20). "Bodily injury" is statutorily defined to include "a cut, abrasion, bruise, burn or disfigurement, and physical pain or temporary illness or impairment of the function of a bodily member, organ, or mental faculty[.]" Id. § 39-11-106(a)(2).

As relevant to this case, to sustain a conviction for resisting arrest, the State had to prove that the Defendant "intentionally prevent[ed] or obstruct[ed] anyone known to [him] to be a law enforcement officer . . . from effecting . . . [an] arrest . . . by using force against the law enforcement officer[.]" See T.C.A. § 39-16-602(a) (2012). Force is defined as "compulsion by the use of physical power or violence and shall be broadly construed to accomplish the purposes of this title[.]" Id. § 39-11-106(a)(12). Unless a defendant is claiming self-defense against excessive force from officers, see T.C.A. § 39-11-611(e), "[w]hether the arrest was or was not supported by probable cause is not determinative as to whether defendant resisted arrest." State v. Edward Iroghuehi Isibor, No. 01C01-9610-CC-00441, 1997 WL 602945, at *3 (Tenn. Crim. App. Sept. 30, 1997), perm. app. denied, (Tenn. Aug. 3, 1998).

-11-

**A. Assault.** In challenging the sufficiency of the evidence to sustain the assault conviction, the Defendant argues that "[i]f the jury had been allowed to inspect the plastic Pepsi bottle, they would have been able to feel the weight of the plastic bottle, throw the plastic bottle to see how far it went, see how much liquid was in the plastic bottle, and see the damages the plastic bottle caused if it came into contact with anyone."

Viewed in the light most favorable to the State, the evidence presented at trial was sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the Defendant caused Deputy Lisi to reasonably fear imminent bodily injury. Deputy Lisi testified that the Defendant swore at him and exited his vehicle while threatening, "You don't talk to my dad that way. . . . I'm going to kick you." Multiple witnesses observed the Defendant aggressively charge at Deputy Lisi, and by the Defendant's own admission, he weighed 350 pounds at the time of his arrest. The Defendant did not dispute the fact that he threw a plastic bottle at the deputy. Deputy Lisi testified that he was struck by the bottle, and witnesses Deputy Marquess and Tristan Dailey corroborated this testimony. It is well-established that the testimony of the victim, alone, is sufficient to sustain a conviction. See, e.g., State v. James Theron Hale, No. M2004-00870-CCA-R3-CD, 2005 WL 711908, at *4 (Tenn. Crim. App. Mar. 29, 2005) (rejecting defendant's claim that assault victim's testimony was not corroborated by independent evidence); see also State v. Smith, 42 S.W.3d 101, 106 (Tenn. Crim. App. 2000). The State presented sufficient proof to sustain the assault conviction, and it was not necessary to produce the plastic soda bottle as evidence.

**B. Resisting Arrest.** In challenging the sufficiency of the evidence to support his conviction for resisting arrest, the Defendant contends that "[i]f the jury had been allowed to see a demonstration of the taser, they would have been able to see the affects [sic] on an individual, how a person's body reacts involuntarily to a taser, the damages the taser causes to an individual, how an individual reacts to a taser, and the inherent excessively forceful nature of the taser."

Viewed in the light most favorable to the State, the evidence was sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the Defendant used force to resist arrest. Both deputies testified that Deputy Lisi chased the Defendant across the highway where they proceeded to fight. The Defendant resisted official commands to halt and to show his hands in order to be handcuffed. He continued to resist, and both deputies were necessary to subdue the Defendant on the ground in order to handcuff him. The deputies stated that the Defendant only complied with his arrest after he was tased in the forearm. In contrast, the Defendant testified that he ran away from Deputy Lisi because the taser felt like an electric fence. He said that he was tased again "before [he] ever hit the ground[.]" He stated that he could not move his arm to comply with his arrest and that he was subsequently restrained with "torture type handcuffs[.]" In our

view, this case amounted to a classic credibility contest between the Defendant and the Clay County deputies. The jury accredited the testimony of the law enforcement officers, as evidenced by the verdict, and rejected the Defendant's testimony. It was the prerogative of the jury to weigh and evaluate the evidence and to make reasonable inferences based on the proof. Moreover, this court has consistently held that a defendant's efforts in preventing an officer from handcuffing him are sufficient to support the element of force. See State v. Jeremy D. Parvin, No. E2014-01569-CCA-R3-CD, 2015 WL 2128585, at *3 (Tenn. Crim. App. May 6, 2015) (citing cases in which this court held that actions taken to prevent handcuffing constitute force to support a conviction for resisting arrest). We conclude that the evidence was sufficient to sustain the Defendant's convictions.

**IV. Length of Trial.** Next, the Defendant asserts that the trial court erred by conducting the trial beyond reasonable hours. Specifically, he argues that defense counsel was fatigued due to his age and medical condition and that the court should have granted his motion to set reasonable time limits for the length of the trial days. The State argues that the Defendant waived this issue because he failed to object on the first day of trial and failed to renew his oral motion after the trial court reserved its ruling on the second day.

We agree that the Defendant failed to make contemporaneous objections regarding this claim. See Tenn. R. App. P. 36(a). We further note that although the Defendant raised this issue in his amended motion for new trial, he did not include a transcript of the hearing in the appellate record. See Tenn. R. App. P. 24(b). Waiver notwithstanding, this issue is without merit.

The record reflects that jury selection began on Thursday morning, April 10, 2014. It is unclear when the proceedings ended on the first day of trial.[2] The trial resumed on Friday, April 11, 2014, at 8:00 a.m. at which point defense counsel placed his objection to working past 5:30 p.m. on the record. Defense counsel noted that he had prepared for a three-day trial under the assumption that the case would extend into Saturday. He stated that based on his age, medical condition, and the hour-long drive back to his home, conducting the trial beyond normal hours would "become[] an endurance contest." Counsel argued that the jury would treat the Defendant unfairly if forced to stay past 7:00 p.m.

The trial court responded that it would "play it by ear," though its intent was "to

---

[2] In his oral motion on the second day of trial, defense counsel noted that the proceedings ended at around 7:00 p.m. the night before. In his amended motion for new trial, the Defendant argued that "court was not dismissed until approximately 7:30 or 8:00 p.m." Finally, in his brief, the Defendant asserts that the first day of trial lasted "until approximately 9:00 p.m."

push on." The court urged defense counsel to stay on point with his examination of witnesses and to avoid wasting time on irrelevant questions to "get through the case at a reasonable hour." The court noted that "it would be speculation" that the jury would treat the Defendant unfavorably. It reserved its ruling on the Defendant's motion but stated that it was not inclined to adjourn at 5:00 p.m. absent unforeseen circumstances. In response, defense counsel stated that he would "probably be ineffective from 5:00 on."

Thereafter, the jury retired at 4:15 p.m. on Friday, April 11, 2015, to begin its deliberations. At 7:15 p.m., the jury returned a verdict of guilty as to assault and resisting arrest and acquitted the Defendant on two counts. The jury elected not to impose any fines for the Defendant's two convictions.

The record further reflects that the Defendant did not renew his motion to adjourn at 5:30 p.m., when the jury was deliberating the case. At approximately 5:40 p.m., the jury asked the court to review the video recording of the Defendant's stop, and the court obliged. During its deliberation, the jury sent the court written questions at 6:20 p.m. and at 6:35 p.m., which the court addressed on the record in the presence of counsel.

We note that the scheduling of a trial rests within the sound discretion of the trial court. See State v. Poe, 755 S.W.2d 41, 47 (Tenn. 1988) (trial court did not err in requiring the trial to proceed past 5:30 p.m. despite defense counsel's request to adjourn); see also State v. Reid, 213 S.W.3d 792, 826 (Tenn. 2006) (trial court did not abuse its discretion in extending court hours beyond eight hours per day). In State v. Parton, 817 S.W.2d 28, 33 (Tenn. Crim. App. 1991), this court addressed the issue of "late night" court sessions as follows:

> It is clear in this state that late night court sessions should be scheduled "only when unusual circumstances require it. . . ." [State v.] McMullin, 801 S.W.2d [826, 832 (Tenn. Crim. App. 1990)]. Regardless of whether counsel or any juror objects, the late night sessions should be avoided; and they must be justified because of unusual circumstances. If the requisite unusual circumstances do exist and late night sessions are scheduled because of necessity, good practice would be to also let the record affirmatively reflect that all counsel and all jurors expressly agree. But the threshold question which must always be determined by the court is whether the circumstances justify the unusual session.

Id. at 33-34.

Upon review, we cannot conclude that the trial court abused its discretion or that there was any abridgement of the Defendant's constitutional rights. As an initial matter,

-14-

the record does not support the Defendant's argument that the trial days extended beyond reasonable hours. We note that this case is distinguishable from other cases where this court found reversible error on the part of the trial court. Here, the proceedings adjourned at around 7:00 p.m. each night, rather than late into the evening hours. See Hembree v. State, 546 S.W.2d 235 (Tenn. Crim. App. 1976) (trial court committed reversible error when it required defense counsel to try the case from 9:00 a.m. until 1:00 a.m. the following day despite counsel's protest); McMullin, 801 S.W.2d at 827 (granting defendant a new trial after the trial court extended the length of trial to 11:45 p.m. on the first day and to 11:50 p.m. on the second day, over the objection of defense counsel and the jurors); Parton, 817 S.W.2d at 33 (finding plain error where trial court conducted proceedings until 2:15 a.m.). Here, the Defendant's failure to object during jury deliberation and his resulting acquittals belie his contention that he was denied due process or that counsel was ineffective based on the length of the trial days.[3] The Defendant is not entitled to relief on this issue.

**V. Jury Selection.** Finally, the Defendant argues that the trial court erred in rehabilitating a biased juror who should have been dismissed for cause. He asserts that "the trial court allowed the bias of a potential juror to permeate the proceeding" because the "juror announce[d] in court that they would believe the witness no matter what that witness sa[id][.]" He contends that this abuse of discretion warrants a new trial. The State responds that this issue is waived because the Defendant failed to cite to the record or even identify the juror in question.

We agree with the State that Defendant failed to support his argument with appropriate references to the record. "Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court." Tenn. Ct. Crim. App. R. 10(b). Moreover, a brief shall contain "[a]n argument . . . setting forth the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record . . . relied on." Tenn. R. App. P. 27(a)(7). We note that although the Defendant did cite to

---

[3] Interestingly, this court noted in McMullin that:

> The nature of the session being held is of considerable importance in judging whether the ability of counsel is affected adversely. Certainly, once a case has been submitted to the jury the function of the attorneys is much less demanding, and the right to the assistance of counsel would hardly be denied if a jury is allowed to deliberate into the evening hours. The key due process question in that instance is whether or not all of the jurors are both alert and desirous of continuing deliberations, assuming in the first instance that there is a good reason not to recess court at the end of a normal work day.

McMullin, 801 S.W.2d at 830 (emphasis added).

-15-

the relevant sections of the transcript in the facts section of his brief, he did not cite to the record in his argument section in four of his five issues. Based on our review of the record, we conclude that the Defendant insufficiently outlined his contentions with regard to the jury selection issue. We will not speculate as to which potential juror the Defendant refers, and the Defendant has waived appellate review of the claim. See Tenn. Ct. Crim. App. R. 10(b); State v. Hammons, 737 S.W.2d 549, 552 (Tenn. Crim. App. 1987).

## CONCLUSION

Upon review, we affirm the judgments of the Clay County Criminal Court.


_____
CAMILLE R. McMULLEN, JUDGE