IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs January 10, 2017

**GREGORY D. VALENTINE, SR. v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Sumner County**
**No. 298-2014      Dee David Gay, Judge**
_____

**No. M2016-00854-CCA-R3-PC – Filed February 23, 2017**
_____

Gregory D. Valentine, Sr., ("the Petitioner") entered a "best interest" plea to twenty counts of identity theft, six counts of criminal simulation, and one count each of forgery, theft of property valued between $10,000 and $60,000, and money laundering. The Petitioner received an effective sentence of twelve years and eight months; he was ordered to serve thirty-two months with a seventy-five percent release eligibility in the county jail and ten years with a thirty percent release eligibility on probation. The Petitioner filed three pro se motions to set aside his guilty pleas, which the trial court summarily denied. The Petitioner appealed, and this court reversed and remanded for a hearing on the motions to set aside the Petitioner's guilty pleas. On remand, the trial court denied the Petitioner's motions. The Petitioner appealed, and this court affirmed the trial court's denial. The Petitioner then filed a petition for post-conviction relief, which the post-conviction court summarily denied. The Petitioner appealed the denial, and this court reversed and remanded for a hearing on the issue of ineffective assistance of counsel. After this court remanded this case, the Petitioner filed a motion to recuse, which the post-conviction court denied after a hearing. The post-conviction court held an evidentiary hearing on the Petitioner's petition for post-conviction relief and denied relief. On appeal, the Petitioner argues that the post-conviction court erred in denying post-conviction relief and by denying his motion to recuse. After a thorough review of the record and applicable case law, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which THOMAS T. WOODALL, P.J., and ROBERT W. WEDEMEYER, J., joined.

Jordan M. Sluder, Madison, Tennessee, for the appellant, Gregory D. Valentine, Sr.

Herbert H. Slatery III, Attorney General and Reporter; Zachary T. Hinkle, Assistant Attorney General; Ray Whitley, District Attorney General; and Thomas Dean, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I. Factual and Procedural Background**

*Guilty Plea Submission Hearing*

During the plea colloquy, the State summarized the facts supporting the Petitioner's best interest plea as the following:

> The facts stem from events on the 30th of September, 2009[,] in Hendersonville, Tennessee. At that time, one of the Bank of America branches called Hendersonville Police Department, said they had in the bank at that moment a member of a fraud ring who had perpetrated identity theft. She was in the bank at that time. Ultimately, they reported that she was leaving the bank and fleeing the premises.

> Hendersonville Police Department Officers were actually driving by the bank at that time; they saw the woman fleeing the bank. Then they heard the call almost immediately. They turned around; they saw the woman get into a van containing, counting her, six individuals. It was a rental van out of California.

> The police began an investigation at that time to determine who she was. She said she was Gail Shapiro, which is the name on the identification that she had presented to the Bank of America. The other defendants, all the others in the van, supported that story that they had just picked her up. They didn't know her.

> . . .

> What we have is on the 30th, Maurice Reed went into a bank in Hendersonville at about 9:30 in the morning, started an account under the name of Greg Shapiro. He then went to the Madison branch at about 10:30, 10:15 . . . ; Bank of America made a transfer from the real Greg Shapiro's account to the bogus Greg Shapiro account he had just created, transferred $16,000, [and] withdrew

- 2 -

$7,500. Then [he returned to] the van, and he went back to Hendersonville later that day. They withdrew another $7,500 from a different branch of Bank of America.

And then around 2:00 in the afternoon, with all six individuals in the van, Yolanda Carter went into the Bank of America, attempted to start an account under the name of Gail Shapiro. The bank got wise [and] called Hendersonville. . . .

Based on that information and the numerous false identifications that were . . . later found in the van, and the many scraps of paper in the van with bank account holder's names, social security numbers, account number[s], date of birth, sometimes mother's maiden name[,] that sort of information that led to the charges before the Court.

[The Petitioner was charged with] [c]riminal [s]imulation for the fake [identifications,] [i]dentity [t]heft for the information on the many pieces of paper regarding the individual account holders[,] [f]alse [r]eport for saying that the defendant who was later determined to be Yolanda Carter was Gail Shapiro[,] [t]heft over $10,000 relating to the $15,000 that was removed from Greg Shapiro's bank account[,] [f]orgery for Maurice Reed signing the name of Gregory Shapiro on the bank documentation to open the false bank account that morning in Hendersonville, and identity theft for his use of Greg Shapiro's name at that time, and one [i]dentity [t]heft count for Yolanda Carter using Gail Shapiro's name . . . .

There is a money laundering charge that is Money Laundering by Promotion of a Criminal Enterprise by Reinvesting Criminal Proceeds . . . under [Code section 39-14-]903(b) of the money laundering [statute]. That is for the deposit of $100 that went in to start the bogus account on that morning in the name of Greg Shapiro. . . .

[The Petitioner] according to the State's information is the leader of this enterprise, at least the highest ranking person of the enterprise that was in the van; therefore, we have made a different offer to him than to the others.

The trial court informed the Petitioner that a best interest plea "has the same effect as a guilty plea or a guilty verdict by a jury." The Petitioner stated that he had graduated high school and he affirmed that he had signed the plea agreement. The Petitioner also agreed that trial counsel had discussed the plea agreement and the elements of the charged offenses with him and that he understood the plea agreement. He stated that he was satisfied with trial counsel's representation. The trial court informed the Petitioner of his right to plead not guilty and proceed to trial, to subpoena witnesses in his defense, to cross-examine the State's witnesses, to testify or not testify at trial, to be represented by an attorney, and to appeal. The trial court accepted the Petitioner's best interest guilty plea and imposed the sentence set out in the plea agreement. The trial court entered the judgments for the Petitioner's convictions on October 14, 2010.

### Motions to Set Aside Guilty Pleas

The Petitioner thereafter filed three pro se motions to set aside his guilty pleas on October 19-21, 2010. The trial court summarily denied the Petitioner's motions, and the Petitioner appealed. On appeal, this court reversed and remanded for the trial court to conduct a hearing on the motions, concluding that "[the Petitioner]'s allegations are sufficient to warrant an evidentiary hearing on his motion to withdraw the guilty pleas." State v. Gregory Darnell Valentine (Valentine I), No. M2010-02356-CCA-R3-CD, 2012 WL 3263117, at *1-2 (Tenn. Crim. App. Aug. 10, 2012), no perm. app. filed.

### Hearing on Motions to Set Aside Guilty Pleas

On September 28, 2012, the trial court conducted a hearing on the Petitioner's motions to set aside his guilty pleas. The trial court found that the transcript of the guilty plea submission hearing reflected that the Petitioner "made no complaints about his pleas" and that "[the Petitioner's] plea[s] w[ere] voluntary and knowing, and in his transcript he had no complaints against the attorney." State v. Gregory D. Valentine (Valentine II), No. M2012-02487-CCA-R3-CD, 2013 WL 4068607, at *4 (Tenn. Crim. App. Aug. 13, 2013), perm. app. denied (Tenn. Dec. 12, 2013).

> [The Petitioner] testified that because he had filed his pro se motions to set aside his plea, he had remained in jail until the date of the evidentiary hearing, September 28, 2012, even though he would have been released in September 2011 pursuant to his judgments of conviction. . . . He also acknowledged that if the court granted his motions, he would start his cases anew. Moreover, [the Petitioner] acknowledged that if his motions were granted, then he would remain in confinement until trial unless he was able to post bond.

[The Petitioner] said he made the decision to file his first motion to set aside his pleas the same day he entered his best interest pleas . . . . He alleged in his first motion that his attorney had coerced him into entering his pleas by telling him that "it was going to be an all[-]white jury, [the trial judge] was mean, [and the judge] was going to give [him] [fifty] years." He said that at the time he entered his pleas, he had been in jail for approximately thirteen months and had never told his attorney he wanted to plead guilty. He stated, "From the time I got locked up from September 30th, 2009, my offer was always 30 years" but on "October 14th, [the offer] miraculously [was reduced] to two years or three years or something[.]"

Id. The Petitioner testified that trial counsel informed him that if he did not accept the State's plea offer then trial counsel would write a letter to the Board of Professional Responsibility explaining that trial counsel had represented the Petitioner to the best of his ability. Id. at *4-5. The Petitioner stated that trial counsel "became belligerent" when he did not accept the State's offer. Id. at *5. The Petitioner then explained that trial counsel coerced him into pleading guilty by allowing his girlfriend, Takisha Johnson ("co-defendant Johnson"), to meet with the Petitioner behind the sergeant's desk and kiss him, before and after his guilty plea submission hearing. Id. He stated that co-defendant Johnson asked him to plead guilty because she wanted to go home and be with her children. Id. The Petitioner asserted that the sergeant "tried to intervene," but trial counsel "was, like, no, go ahead and let him . . . ." Id. The Petitioner also stated that trial counsel offered to represent him for free in a federal prosecution for the same offenses. Id. Additionally, "[the Petitioner] said he knew his co-defendants, Kevin Ross, Howard Young, and [co-defendant] Johnson, were going 'to go home' if he accepted the State's offer." Id.

The Petitioner testified that "trial counsel told him not to ask any questions during the plea submission hearing and to say 'yes and no and get this over with and get out of here as fast as possible.'" Id. The Petitioner testified that he "was too scared to say anything else besides go along with what [trial counsel] told [him.]" Id. The Petitioner explained that he did not want to withdraw his motions to set aside his pleas because he was not guilty of the offenses. Id. at *6.

On cross-examination, the Petitioner made the following statements, as summarized in Valentine II:

[The Petitioner] admitted that even though he was a multiple convicted felon, he received a probationary sentence of ten years at thirty percent, which is the release eligibility percentage that someone with no

- 5 -

prior felonies receives. He also admitted that if convicted at trial on his charges, he would receive a substantial amount of time. . . .

. . .

[The Petitioner] admitted that in addition to his complaint about trial counsel, he had also written letters complaining about the Sumner County justice system. The [trial] court took judicial notice of the fact that [the Petitioner] had filed a complaint with the Court of the Judiciary against the trial court. [The Petitioner] also admitted that he had five to seven prior felony convictions.

In response to questioning from the trial court, [the Petitioner] stated that it was not in his best interest to accept the State's final offer of thirty-two months at seventy-five percent in confinement with ten years at thirty percent on probation even though he had initially been offered thirty years in confinement because he was innocent of the charges. He stated that he entered his best interest pleas because he "was psychologically abused, coerced[.]" . . .

. . .

[The Petitioner] stated that he was able to file his first motion to set aside his pleas the same day he entered them "because [he] was no longer in the presence of [his] abusers." He said that by "abusers" he meant trial counsel.

Id. at *6-7.

Co-defendant Johnson testified that, when the Petitioner did not want to accept the State's plea offer, she "was allowed to go to the sergeant's station first to try to talk to him." Id. at *7. She asked the Petitioner to accept the plea offer because she wanted to go home and did not want to fight the charges. Id. Co-defendant Johnson met with the Petitioner again after he was moved to a cell and again asked him to accept the State's plea offer. Id. She explained that if the Petitioner did not accept the State's plea offer then the other co-defendants would not be released. Id.

Trial counsel testified that he had practiced criminal law since 1997 and had represented "thousands" of defendants. Id. at *8. He explained that he met with the prosecutor and the Petitioner "numerous times on this case." Id. Trial counsel stated that the prosecutor conveyed the plea offer of an effective sentence of twelve years and eight

months before the Petitioner's court date and that he met with the Petitioner "in jail prior to the plea date to convey the offer to him." Id. Trial counsel "recalled meeting with [the Petitioner] in the general population holding tank without [co-defendant] Johnson," but he "was unsure whose idea it was to have [co-defendant] Johnson talk to [the Petitioner][.]" Id. As summarized in our opinion in Valentine II, trial counsel stated the following regarding the timing of the Petitioner's acceptance of the plea:

> "[The Petitioner] gave me the impression . . . prior to his plea date that he would accept that offer [of thirty two months at seventy-five percent in confinement followed by ten years on probation]. The date of the plea, [the Petitioner] changed his mind. He did not want to accept that offer." Trial counsel stated that the issue regarding the release of the co-defendants for time served was a part of the plea agreement and had been resolved prior to [the Petitioner]'s plea date.
>
> Trial counsel stated that when [the Petitioner] changed his mind and rejected the offer, [co-defendant] Johnson was brought out to meet with him, and trial counsel observed this meeting. He stated, "I didn't want to hover. We were there for the purpose of-they wanted to discuss the plea, because we thought it was a done deal, and [co-defendant] Johnson did beg him to take it. She said, please, please take it. Her recollection of that is correct." However, trial counsel stated that he did not remember "any of the kisses" between [the Petitioner] and [co-defendant] Johnson. He stated that [the Petitioner], after talking with [co-defendant] Johnson, decided to accept the State's offer.

Id. at *8-9. Trial counsel testified that he informed the Petitioner that the federal government would not likely prosecute him for the offenses and that "he was so certain that [the Petitioner] would not be federally prosecuted that he signed a document promising to represent [the Petitioner] free of charge if any federal charges arose." Id. at *9. "Trial counsel denied making statements to [the Petitioner] about the trial judge and about having an all[-]white jury[.]" Id. Trial counsel stated that the plea offer of an effective sentence of twelve years and eight months "was the result of a compromise between [the Petitioner] and the State[]" because "[the Petitioner] was willing to take a probation offer, but he was looking for probation and [the State was] talking about 30 years." Id. Trial counsel also stated that the Petitioner "insisted that a specific release date be included in the plea agreement." Id.

The trial court found that "the transcript from the plea submission hearing indicated that [the Petitioner]'s plea was knowing and voluntary[.]" Id. The trial court also found that the Petitioner's testimony was not "believable, credible[,] or truthful." Id.

at *10. The trial court specifically found that the Petitioner's testimony that trial counsel informed him that he would receive an all-white jury and that the trial court was a "mean judge" and would sentence the Petitioner to fifty years was "discredited by trial counsel" and "unbelievable." Id. The trial court also found that the Petitioner and co-defendant Johnson's testimony that they kissed in the jail was "incredible and unbelievable[]" and that co-defendant Johnson's testimony was not credible. Id. The trial court credited the testimony of trial counsel and found that "[t]he testimony is clear that [the Petitioner] gave an initial impression that he would take the offer after it was made." Id. The trial court found that "[a]lthough the [Petitioner] later changed his mind about the plea and although he had an opportunity to talk to his girlfriend, he agreed to take it." Id. The trial court concluded that withdrawal of the Petitioner's guilty plea was not necessary to prevent manifest injustice and denied the Petitioner's motions to set aside his plea. Id. at *11. The Petitioner timely appealed. Id.

On appeal, this court affirmed the trial court's denial of the Petitioner's motion to set aside his guilty pleas. Id. at *14. The Petitioner then filed a timely petition for post-conviction relief, arguing that his guilty pleas were involuntarily entered, his convictions were based on a coerced confession, and he was denied the effective assistance of counsel. Gregory D. Valentine v. State (Valentine III), No. M2014-00977-CCA-R3-PC, 2015 WL 274181, at * 5 (Tenn. Crim. App. Jan. 21, 2015), no perm. app. filed. The post-conviction court summarily denied the petition on the grounds that (1) the Petitioner's allegation that his convictions were based on a coerced confession was waived; and (2) the Petitioner's allegations of ineffective assistance of counsel and involuntary guilty plea was previously determined. Id. The Petitioner timely appealed. Id. On appeal, this court reversed the post-conviction court's decision and remanded for a hearing on the issue of ineffective assistance of counsel. Id. at *7. Additionally, this court held that "the Petitioner's allegation of an involuntary plea was previously determined on direct appeal and therefore may not be grounds for post-conviction relief[]" and that "the Petitioner's claim that his convictions were based on a coerced confession is waived because the Petitioner failed to raise this argument on direct appeal." Id. (citing Tenn. Code Ann. § 40-30-106(g)-(h)).

*Motion to Recuse Hearing*

After this court issued its opinion in Valentine III and remanded for an evidentiary hearing, the Petitioner filed a motion to recuse on May 8, 2015. At a hearing, the post-conviction court noted that the Petitioner filed a complaint with the Court of the Judiciary regarding the post-conviction court and that the Petitioner's complaint was dismissed on October 21, 2011. The post-conviction court stated that "a complaint against the judge is not a basis for recusal." The post-conviction court found that "there [was] nothing in the record at this particular time that would cause [the post-conviction court] to have any

apprehension about [its] ability to preside fairly and impartially in this particular . . . proceeding on a post-conviction relief [petition]." Further, the post-conviction court found that "[t]here [was] nothing on the record that shows overbearingness or harshness or bias or unfairness . . . ." On June 29, 2015, the post-conviction court entered an order denying the Petitioner's motion to recuse.

*Post-Conviction Hearing*

At the post-conviction hearing, the post-conviction court admitted the transcripts of the Petitioner's guilty plea submission hearing and the hearing on motions to set aside guilty pleas as evidence. Sergeant Keith Bean with the Internal Affairs Division of the Sumner County Sheriff's Department stated that he was unable to obtain any video recording of the sergeant's desk in the Sumner County Jail from October 14, 2010, because the video recording of that date had been recorded over. He also explained that the Sumner County Jail did not allow contact between male and female inmates.

Trial counsel testified that he represented the Petitioner on the underlying charges in this case. Trial counsel stated that "from the beginning [the Petitioner] was insistent that he was innocent of the charges, but he also authorized [trial counsel] to seek negotiations with the State." While trial counsel could not remember exactly when he finalized the details of the plea offer with the prosecutor, he testified that he conveyed the State's plea offer of an effective sentence of twelve years and eight months before the Petitioner's guilty plea submission hearing. Trial counsel stated that the Petitioner initially did not want to accept the State's plea offer, but the Petitioner later changed his mind. Trial counsel did not remember whether it was his or the Petitioner's idea to have the Petitioner meet with co-defendant Johnson before the Petitioner's guilty plea submission hearing. Trial counsel stated that he was present during the Petitioner's meeting with co-defendant Johnson "but [he] wasn't standing right next to them." He explained that "[he] allowed them to speak to each other and have some degree of privacy, but there were deputies constantly around when that was going on." Trial counsel stated that co-defendant Johnson asked the Petitioner to accept the State's plea offer, and the Petitioner agreed to accept the plea offer after their meeting.

On cross-examination, trial counsel stated that he "would not have spent hours negotiating with [the State] trying to enlist a plea agreement if [he] didn't have the authority from [his] client to seek a plea agreement." Regarding the terms of the Petitioner's plea agreement, trial counsel stated that the Petitioner was "insistent on" a specified release date and "that the [f]ederal [g]overnment not get involved in the case[]" because the Petitioner was "concerned that if he pled, . . . there might be some sort of federal charge[.]"

- 9 -

The Petitioner testified that he informed trial counsel that he wanted to go to trial and that he "wasn't interested in [any] of the State's deals." He stated that he met with co-defendant Johnson three times on the date of his guilty plea submission hearing, "on[c]e at the Sergeant's desk, on[c]e in the holding tank . . . , and on[c]e outside by the little office." The Petitioner stated that the purpose of meeting with co-defendant Johnson was "to try and get [him] to take the plea." He explained that he signed the plea papers because several of his rights were violated and he "succumb[ed] to the pressure" from trial counsel and co-defendant Johnson. The Petitioner stated that he wanted to go to trial because he was innocent of the charges against him. He explained that he informed the trial court during the plea colloquy that his plea was freely entered because "[a]fter telling [his] attorney several times that [he] wasn't interested in this deal and talking about the letter to the Board of Professional Responsibility, [trial counsel] just kept stating that he [had] done the best job and [the trial court] was basically going to be an all right judge and [he] would get 100 years . . . ." The Petitioner stated that he could not recall why he had agreed to enter best interest pleas because he was emotional during his plea submission hearing. He stated that, prior to his guilty plea submission hearing, he had been incarcerated for thirteen months, during which he had not been allowed to contact co-defendant Johnson.

On cross-examination, the Petitioner testified that at the time of his arrest he was working at a gardening service. The Petitioner agreed that the police found "thousands of dollars" on the occupants of the van, including the Petitioner, and found fake I.D.s in the van, but he explained that none of the fake I.D.s had his name on them. The Petitioner stated that trial counsel never informed him of the State's plea offer and that he did not recall asking trial counsel to negotiate for a specific release date. He explained that he did not discuss any plea offers until the day of his guilty plea submission hearing and that he informed trial counsel that he was not interested in the State's plea offers. The Petitioner stated that he filed his first motion to set aside his guilty pleas on the same day as the guilty plea submission hearing. He explained that he filed this motion "[a]s soon as [he] got up out of the presence of . . . the person [he] was intimidated by, [trial counsel]" and asserted that his motions were not related to the fact that his co-defendants had received their time-served judgments. The Petitioner agreed that during the plea colloquy he informed the trial court that his guilty pleas were voluntarily entered but stated that he did not indicate to the trial court that he was being coerced to plead guilty because he was "very emotional psychologically."

On April 13, 2016, the post-conviction court entered a written order denying the petition for post-conviction relief. The post-conviction court credited the testimony of trial counsel and noted that, at prior proceedings, it had not credited the testimony of co-defendant Johnson. The post-conviction court noted that it had not credited the Petitioner's testimony at prior proceedings and that it did not credit the Petitioner's

testimony at the post-conviction hearing. The post-conviction court found that trial counsel "did an excellent job of representing the [Petitioner] in this complicated case with other defendants" and that he "adequately investigated the case, received discovery, and talked with the prosecutor." The post-conviction court found that the Petitioner "controlled the terms of the settlement process, and the terms that [the Petitioner] wanted in a settlement with the District Attorney's Office were incorporated into the settlement agreement." The post-conviction court found that the Petitioner had not carried his burden of proving that trial counsel provided ineffective assistance of counsel. The Petitioner's timely appeal followed.

## II. Analysis

### *Denial of Motion to Recuse*

The Petitioner asserts that the post-conviction court erred in denying his motion to recuse because "[t]he judicial complaint filed against the trial court judge would lead a person of ordinary prudence to have a reasonable basis for questioning the judge's impartiality." The Petitioner further argues that the post-conviction court "inten[ded] to create an unjust result in this case[]" because this court reversed the trial court's summary dismissal of the Petitioner's motions to set aside his guilty pleas and the post-conviction court's summary dismissal of his petition for post-conviction relief. Lastly, the Petitioner argues that it was "unfair" that the post-conviction court accredited the testimony of trial counsel and not the Petitioner when "much of [the Petitioner's] testimony was corroborated by trial counsel and [co-defendant Johnson]." The State responds that the post-conviction court did not abuse its discretion in denying the Petitioner's motion to recuse.

A trial judge should recuse himself whenever the judge "has any doubt as to his ability to preside impartially in a criminal case or whenever his impartiality can reasonably be questioned." Pannel v. State, 71 S.W.3d 720, 725 (Tenn. Crim. App. 2001) (citing State v. Hines, 919 S.W.2d 573, 578 (Tenn. 1995)). Recusal is appropriate "when a person of ordinary prudence in the judge's position would find a reasonable basis for questioning the judge's impartiality." Alley v. State, 882 S.W.2d 810, 820 (Tenn. Crim. App. 1994). For a judge to be disqualified from presiding over a case, the bias or prejudice "must be of a personal character, directed at the litigant, must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from . . . participation in the case." Id. (internal quotation marks omitted). The judge generally need not recuse him or herself if the bias or perceived bias is based upon a judicial source, such as the "actual observance of witnesses and evidence during trial." Id. However, if the judge's bias is "so pervasive that it is sufficient to deny the litigant a fair trial, it need not be extrajudicial." Id. Whether to grant a motion to

recuse rests within the discretion of the trial court, and this court will not reverse the trial judge's decision absent an abuse of discretion. Hines, 919 S.W.2d at 578. A trial court abuses its discretion "only when the trial court has applied an incorrect legal standard, or has reached a decision which is illogical or unreasonable and causes an injustice to the party complaining." State v. Ruiz, 204 S.W.3d 772, 778 (Tenn. 2006) (citing Howell v. State, 185 S.W.3d 319, 337 (Tenn. 2006)).

## Judicial Complaint

The Petitioner filed a judicial complaint against the post-conviction court, which alleged that the post-conviction court had violated the Petitioner's "[Sixth] Amendment right to address the correction of manifest injust[ice]." The complaint further alleged that the post-conviction court had violated the Petitioner's "[Fifth] Amendment [right] in an attempt of a second persecution after . . . [his] co-defendants['] admission[s] of guilt that protect[ed] [him] from double jeopardy[]" and that the Petitioner was wrongly imprisoned "against [his] liberty in exchange for a guilty plea . . . ." On October 21, 2011, the disciplinary counsel of the Tennessee Court of the Judiciary summarily dismissed the Petitioner's complaint against the post-conviction court.

The Petitioner's judicial complaint, which was filed several years before the current petition for post-conviction relief, does not establish that the post-conviction court was subjectively or objectively biased against the Petitioner. The post-conviction court did not abuse its discretion in denying the Petitioner's motion to recuse on this ground. See State v. Parton, 817 S.W.2d 28, 29-30 (Tenn. Crim. App. 1991) (holding that the trial court did not abuse its discretion in denying a motion to recuse that was based on the defendant's previously filed complaint against the trial court in the Tennessee Court of the Judiciary).

## Reversals of post-conviction court's summary dismissals on appeal

In Valentine I, this court reversed the trial court's summary dismissal of the Petitioner's motions to set aside his guilty pleas. 2012 WL 3263117, at *2. In Valentine III, this court reversed the post-conviction court's summary dismissal of the petition for post-conviction relief. 2015 WL 274181, at *7. However, "[t]his court's rulings on, and comments concerning, various actions taken by the trial judge in the [Petitioner's] prior case are not extrajudicial in nature. They are part and parcel of the legal process and constitute an inherent component of the litigation concerning the [Petitioner's] prior case." State v. David W. Gaddis, No. E2011-00003-CCA-R3-CD, 2012 WL 2370636, at *10 (Tenn. Crim. App. June 25, 2012), no perm. app. filed.

Additionally, in its order denying the Petitioner's motion to recuse, the post-conviction court found that "there [was] nothing in the record at this particular time that would cause [the post-conviction court] to have any apprehension about [its] ability to preside fairly and impartially in this particular matter proceeding on a post-conviction relief [petition]." Further, the post-conviction court found that "[t]here [was] nothing [in] the record that shows overbearingness or harshness or bias or unfairness . . . ." The Petitioner has failed to establish that this court's reversals of the post-conviction court's decisions created a bias against him that was so "so pervasive that it [was] sufficient to deny the litigant a fair trial[.]" See Alley, 882 S.W.2d at 820. The post-conviction court did not abuse its discretion in denying the Petitioner's motion to recuse on this ground.

### Post-conviction court's credibility findings

In its order denying the Petitioner's motions to set aside his guilty pleas, the trial court found that trial counsel's testimony was credible, but it found that the testimony of the Petitioner and co-defendant Johnson was not credible. Similarly, in its order denying post-conviction relief to the Petitioner, the post-conviction court found that trial counsel's testimony at the post-conviction hearing was credible, but it found that the Petitioner's testimony was not. "Adverse rulings by a trial court are not usually sufficient grounds to establish bias." Id. at 821. "Rulings of a trial judge, even if erroneous, numerous and continuous, do not, without more, justify disqualification." Id. at 821-22. As noted above, the post-conviction court concluded that it was not subjectively biased against the Petitioner and that "[t]here [was] nothing on the record that shows overbearingness or harshness or bias or unfairness," and the record supports this conclusion. The post-conviction court did not abuse its discretion in denying the Petitioner's motion to recuse on this ground.

*Post-Conviction Standard of Review*

In order to prevail on a petition for post-conviction relief, a petitioner must prove all factual allegations by clear and convincing evidence. Jaco v. State, 120 S.W.3d 828, 830 (Tenn. 2003). Post-conviction relief cases often present mixed questions of law and fact. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001). Appellate courts are bound by the post-conviction court's factual findings unless the evidence preponderates against such findings. Kendrick v. State, 454 S.W.3d 450, 457 (Tenn. 2015). When reviewing the post-conviction court's factual findings, this court does not reweigh the evidence or substitute its own inferences for those drawn by the post-conviction court. Id.; Fields, 40 S.W.3d at 456 (citing Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997)). Additionally, "questions concerning the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the [post-conviction court]." Fields, 40 S.W.3d at 456 (citing Henley, 960 S.W.2d at 579);

see also Kendrick, 454 S.W.3d at 457.  The post-conviction court's conclusions of law and application of the law to factual findings are reviewed de novo with no presumption of correctness.  Kendrick, 454 S.W.3d at 457.

*Ineffective Assistance of Counsel*

The Petitioner argues that the post-conviction court erred in concluding that he had failed to establish by clear and convincing evidence that trial counsel's performance was deficient and that he was prejudiced by trial counsel's deficient performance.

The Petitioner contends that trial counsel's performance was deficient because: (1) trial counsel arranged a meeting between the Petitioner and co-defendant Johnson and allowed the Petitioner and co-defendant Johnson to kiss; (2) "trial counsel told [the Petitioner] he would be convicted by an all-white jury if he went to trial"; (3) "trial counsel demanded [the Petitioner's] signature on an offer rejection form"; and (4) "trial counsel became belligerent when [the Petitioner] refused the offer."  The Petitioner contends that he would have proceeded to trial absent trial counsel's deficient performance.

The right to effective assistance of counsel is safeguarded by the Constitutions of both the United States and the State of Tennessee.  U.S. Const. amend. VI; Tenn. Const. art. I, § 9.  In order to receive post-conviction relief for ineffective assistance of counsel, a petitioner must prove:  (1) that counsel's performance was deficient; and (2) that the deficiency prejudiced the defense.  Strickland v. Washington, 466 U.S. 668, 687 (1984); see State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (stating that the same standard for ineffective assistance of counsel applies in both federal and Tennessee cases).  Both factors must be proven in order for the court to grant post-conviction relief.  Strickland, 466 U.S. at 687; Henley, 960 S.W.2d at 580; Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996).  Accordingly, if we determine that either factor is not satisfied, there is no need to consider the other factor.  Finch v. State, 226 S.W.3d 307, 316 (Tenn. 2007) (citing Carpenter v. State, 126 S.W.3d 879, 886 (Tenn. 2004)).  Additionally, review of counsel's performance "requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  Strickland, 466 U.S. at 689; see also Henley, 960 S.W.2d at 579.  We will not second-guess a reasonable trial strategy, and we will not grant relief based on a sound, yet ultimately unsuccessful, tactical decision.  Granderson v. State, 197 S.W.3d 782, 790 (Tenn. Crim. App. 2006).

As to the first prong of the Strickland analysis, "counsel's performance is effective if the advice given or the services rendered are within the range of competence demanded of attorneys in criminal cases."  Henley, 960 S.W.2d at 579 (citing Baxter v. Rose, 523

S.W.2d 930, 936 (Tenn. 1975)); see also Goad, 938 S.W.2d at 369. In order to prove that counsel was deficient, the petitioner must demonstrate "that counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad, 938 S.W.2d at 369 (citing Strickland, 466 U.S. at 688); see also Baxter, 523 S.W.2d at 936.

Even if counsel's performance is deficient, the deficiency must have resulted in prejudice to the defense. Goad, 938 S.W.2d at 370. Therefore, under the second prong of the Strickland analysis, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. (quoting Strickland, 466 U.S. at 694) (internal quotation marks omitted).

A substantially similar two-prong standard applies when the petitioner challenges counsel's performance in the context of a guilty plea. Hill v. Lockhart, 474 U.S.52, 58 (1985); Don Allen Rodgers v. State, No. W2011-00632-CCA-R3-PC, 2012 WL 1478764, at *4 (Tenn. Crim. App. Apr. 26, 2012). First, the petitioner must show that his counsel's performance fell below the objective standards of reasonableness and professional norms. See Hill, 474 U.S. at 58. Second, "in order to satisfy the 'prejudice' requirement, the [petitioner] must show that there is a reasonable probability that, but for counsel's errors, he would have not have pleaded guilty and would have insisted on going to trial." Id. at 59.

**Trial counsel allowed the Petitioner to have physical contact with co-defendant Johnson during their meetings**

The Petitioner argues that trial counsel's performance was deficient because he allowed the Petitioner to have physical contact with co-defendant Johnson during their meetings before entering his guilty plea. The Petitioner asserts that trial counsel knew that he had not seen co-defendant Johnson in almost a year, that he was in an emotional state, and that trial counsel arranged the meeting and kisses to convince him to plead guilty.

At the hearing on the motions to set aside guilty pleas and the post-conviction hearing, trial counsel testified that he did not remember whether it was his or the Petitioner's idea to have the Petitioner meet with co-defendant Johnson before the Petitioner's guilty plea submission hearing. Additionally, trial counsel stated at the hearing on the motions to set aside the guilty pleas that he did not remember any kisses between the Petitioner and co-defendant Johnson. In its denial of the Petitioner's motions to set aside his guilty pleas, the trial court found that trial counsel's testimony was

- 15 -

credible and that the Petitioner and co-defendant Johnson's testimony that they kissed in the jail was "incredible and unbelievable." The trial court's credibility findings in its order denying the Petitioner's motions to set aside his guilty plea are given the same weight as the post-conviction court's credibility findings. The post-conviction court admitted the transcript of the hearing on the Petitioner's motions to set aside his guilty pleas as evidence at the post-conviction hearing. The post-conviction court credited the testimony of trial counsel and we cannot reweigh the evidence or "substitute [our] own inferences for those drawn by the post-conviction court." See Fields, 40 S.W.3d at 456. The Petitioner is not entitled to relief on this ground.

### Trial counsel informed the Petitioner that he would receive an "all-white jury"

The Petitioner alleges that trial counsel's performance was deficient because he informed the Petitioner that, if he proceeded to trial, he would receive an "all-white jury[.]" Trial counsel did not testify regarding this allegation at the post-conviction hearing, and the post-conviction court did not make specific factual findings regarding this allegation. However, at the hearing on the motions to set aside guilty pleas, trial counsel denied telling the Petitioner that he would receive an "all-white jury" if he proceeded to trial, and the trial court accredited trial counsel's testimony. Further, the trial court found that the Petitioner's testimony that trial counsel informed him that he would receive an all-white jury and to be "discredited" and "unbelievable." The transcript of the hearing on the motions to set aside guilty pleas was admitted as an exhibit at the Petitioner's post-conviction hearing. The post-conviction court credited the testimony of trial counsel and we cannot reweigh the evidence or "substitute [our] own inferences for those drawn by the post-conviction court." See id. The Petitioner is not entitled to relief on this ground.

### Trial counsel showed the Petitioner an offer-rejection letter and was "belligerent" when the Petitioner rejected the plea offer

The Petitioner asserts that trial counsel's performance was deficient because on the morning of his guilty plea submission hearing, after he initially rejected the State's plea offer, trial counsel showed him a letter that trial counsel was going to send to the Tennessee Board of Professional Responsibility. The letter allegedly said that trial counsel had represented the Petitioner to the best of his ability in obtaining the plea offer. The Petitioner further alleges that trial counsel's performance was deficient because he became "belligerent" after the Petitioner initially rejected the State's plea offer. However, these grounds of deficient performance were not alleged in the petition for post-conviction relief, and consequently, the post-conviction court did not set out conclusions of law regarding these grounds. Additionally, the letter was not admitted into evidence at the hearing on the Petitioner's motions to set aside his guilty pleas or at

the post-conviction hearing. We conclude that these grounds are waived. See, e.g., Cauthern v. State, 145 S.W.3d 571, 599 (Tenn. 2004) ("[A]n issue raised for the first time on appeal is waived.").

Because the Petitioner has failed to establish that trial counsel's performance was deficient, we need not address whether the Petitioner was prejudiced. See Finch, 226 S.W.3d at 316. The post-conviction court properly concluded that the Petitioner received effective assistance of counsel.

*Unknowing and Involuntary Guilty Pleas*

Additionally, the Petitioner asserts that because trial counsel's performance was deficient, he unknowingly and involuntarily entered his guilty pleas. However, the issue of whether the Petitioner's pleas were knowing and voluntary has been previously determined by this court in Valentine II. See 2013 WL 4068607, at * 14. In Valentine II, we specifically concluded:

> [The Petitioner]'s plea colloquy shows that he entered his best interest pleas voluntarily, that he was pleased with trial counsel's representation, and that he understood the terms of the plea agreement and the rights he was waiving by entering his pleas. We conclude the transcript of the plea submission hearing is devoid of evidence that trial counsel coerced [the Petitioner] . . . into entering his best interest pleas. We also conclude that [the Petitioner] failed [to] show at the evidentiary hearing that his plea should be withdrawn to correct manifest injustice.

Id. at *13. The Petitioner's allegation that his guilty pleas were unknowing and involuntary was previously determined on direct appeal and therefore may not be grounds for post-conviction relief. See Tenn. Code Ann. § 40-30-106(h). To the extent that the Petitioner is attempting to relitigate the issues regarding the voluntariness of his guilty pleas that were raised and rejected by this court in Valentine II, the post-conviction court correctly dismissed the claims. The Petitioner is not entitled to relief.

### III. Conclusion

For the aforementioned reasons, the judgment of the post-conviction court is affirmed.

_____
ROBERT L. HOLLOWAY, JR., JUDGE